■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MATTHEW M. NICODEMUS, Appellant. [669 NYS2d 98] —Judgment reversed on the law, plea vacated, motion to suppress granted and matter remitted to Genesee County Court for further proceedings on the indictment. Memorandum: In December

1993 the Livingston County Sheriff's Department investigated a number of armed robberies of convenience stores in Livingston and Monroe Counties. As a result of that investigation, an "informational flyer" was circulated, advising police to be on the lookout for two white vehicles with listed license plate numbers. After the distribution of that flyer, a State Trooper stopped a white vehicle owned by Brandie Freville for a traffic violation. Defendant was driving the vehicle, and Freville was a passenger. During a search of the vehicle, the police discovered a small leather pistol holster, but no gun. As a result of that stop, the police obtained photographs of defendant, Freville and the vehicle; those photographs were distributed on another flyer.

On January 30, 1994, at about 2:35 A.M., a Livingston County Deputy Sheriff received a radio dispatch concerning a robbery of a store in Pavilion, a town in Genesee County. The dispatch did not give a description of the robbers and did not mention a vehicle. It stated only that two males, one of whom wore a mask, had left the scene on foot. The Deputy was directed by his sergeant to take a post at the intersection of Routes 20 and 36. Soon thereafter, he observed a white vehicle proceeding along the highway. He followed the vehicle for approximately two miles but was unable to see the license plate number because it was covered with snow. After the vehicle pulled into the driveway of an abandoned house, he pulled in behind it, turned on his takedown lights and sent a radio dispatch for backup. A white female matching the description on the second flyer attempted to exit the vehicle from the driver's side. He ordered her back into the vehicle. When other police officers arrived, the occupants of the vehicle were ordered out with their hands up; one officer had his gun drawn. The officers ordered the occupants, including defendant, to kneel in the snow. The police frisked and handcuffed the occupants, who were then taken to separate patrol cars for questioning. Upon searching the vehicle, the police found a gun and money bag. *Miranda* rights were given and defendant made a statement admitting the Pavilion robbery.

Following a suppression hearing, County Court denied the motion of defendant to suppress his statements and the physical evidence seized from the vehicle. Defendant then entered a plea of guilty to one count of robbery in the first degree.

On appeal, defendant contends that his statements and the physical evidence seized from the vehicle should have been suppressed as the unattenuated product of an illegal stop of the Freville vehicle and the subsequent arrest of defendant without probable cause. We agree.

In evaluating police conduct, the court must determine whether the action taken was justified in its inception and at every subsequent stage of the encounter (*People v De Bour,* 40 NY2d 210, 215). Here, the Deputy effectively seized the vehicle and its occupants when he pulled into the driveway behind it to prevent it from leaving and turned on his takedown lights. That seizure, at a minimum, required reasonable suspicion (*see, People v Spencer,* 84 NY2d 749, 752-754, *cert denied* 516 US 905; *People v May,* 81 NY2d 725, 727; *People v Harrison,* 57 NY2d 470, 476).

Reasonable suspicion is "the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity is at hand" (*People v Cantor,* 36 NY2d 106, 112-113). "The requisite knowledge must be more than subjective; it should have at least some demonstrable roots. Mere 'hunch' or 'gut reaction' will not do" (*People v Sobotker,* 43 NY2d 559, 564; *see, People v Cantor, supra,* at 113). "Nor will good faith on the part of the police be enough to validate an illegal interference with an individual" (*People v Cantor, supra,* at 113).

We conclude that the police lacked reasonable suspicion that the driver or occupants of the vehicle had committed or were about to commit a crime. At the time the Deputy began following the vehicle, he had been informed only that two men had held up a convenience store in a neighboring county and had fled on foot. There was no mention of a vehicle used in connection with the robbery. Although the Deputy testified at the suppression hearing that he followed the vehicle because it matched the general description of the vehicle on the informational flyer about other recent convenience store robberies, he could not verify the license plate number of that vehicle and did not observe any Vehicle and Traffic Law violation, let alone any conduct indicative of criminal activity.

Furthermore, the stop was constitutionally invalid because it immediately escalated into a full-blown arrest, requiring probable cause (*see, People v Johnson,* 102 AD2d 616, 626, *lv denied* 63 NY2d 776). After the Deputy stopped the vehicle, he ordered the driver back into the vehicle. When backup officers arrived, they ordered the occupants of the vehicle to get out with their hands up and kneel in the snow. At least one of the officers had his gun drawn. The occupants of the vehicle were then handcuffed and placed in separate patrol cars. That conduct amounted to a full-blown arrest.

"Probable cause exists if the facts and circumstances known to the arresting officer warrant a prudent man in believing

that the offense has been committed" (*People v Oden,* 36 NY2d 382, 384) and that the person arrested is the perpetrator (*People v Carrasquillo,* 54 NY2d 248, 254). The basis for the belief must not only be reasonable, "but it must appear to be at least more probable than not that a crime has taken place and that the one arrested is its perpetrator" (*People v Carrasquillo, supra,* at 254; *see also, People v De Bour, supra,* at 215-216). The existence of probable cause "must necessarily turn on the facts in each individual case" (*People v Green,* 35 NY2d 193, 195).

We conclude that the police did not have probable cause to believe that the occupants of the vehicle had committed any crime, let alone the robbery of the Pavilion store. The radio dispatch did not mention any vehicle being involved in the robbery, nor was there any description of the robbers other than two males, one of whom was wearing a mask (*see, People v Battaglia,* 56 NY2d 558, *revg on dissenting opn of Hancock, J.,* at 82 AD2d 389, 395-397). The police are not at liberty to arrest a suspect while they search for evidence sufficient to justify the arrest (*see, People v Henley,* 53 NY2d 403).

Defendant, as a passenger in the stopped vehicle, has standing to contest the stop of the vehicle and therefore to challenge any evidence seized as the fruit of the unlawful stop (*see, People v Millan,* 69 NY2d 514, 520; *People v Matthew,* 228 AD2d 260). Therefore, the physical evidence (gun and moneybag) seized from the vehicle, as well as defendant's inculpatory statements to the police, must be suppressed as the fruit of the unlawful stop (*see, People v Cantor, supra,* at 114; *see also, Wong Sun v United States,* 371 US 471).

All concur except Hayes, J., who dissents and votes to affirm in the following Memorandum.

Hayes, J. (dissenting). I respectfully dissent. I disagree with the majority that the police lacked reasonable suspicion that the occupants of the vehicle had committed or were about to commit a crime. Further, I disagree with the majority that the police lacked probable cause to believe that the occupants of the vehicle, including defendant, had committed any crime.

I agree with the majority that there was a de facto arrest of defendant and his companions at the time that they left the vehicle and were handcuffed. Thus, probable cause was required (*see, People v De Bour,* 40 NY2d 210, 216-217). Based upon all of the information available to the police at the time that defendant and his companions vacated their vehicle and were placed under arrest, the police had probable cause to believe that there was criminal activity afoot.

At that time, the police knew that there had been a robbery at a nearby small-town convenience store by two masked men. From background information obtained during the investigation of a series of armed robberies of small-town convenience stores in the past three months, the police were aware that several of them had occurred during the early hours of the morning, just as the instant robbery had been committed. They also had compiled a flier with a picture of a white vehicle and a female accomplice that may have been involved in those robberies. They were also in possession of identification evidence from one of the store clerks who had been robbed and who gave a description of physical characteristics of one of the robbers that matched the physical description of defendant.

Shortly after the instant robbery at about 2:35 A.M. on January 3, 1994, a Livingston County Deputy Sheriff was detailed to the intersection of Routes 20 and 36, a point five miles from the Pavilion store that had just been robbed. The Deputy had in his possession the flier containing a picture of a white vehicle and a female that had been compiled during the ongoing investigation. After the Deputy had been positioned at the intersection for about 20 minutes, he noticed a white vehicle that matched the description of the vehicle in the flier going through the intersection, and he followed it for a couple of miles. He noticed that the vehicle was driving erratically, stopping from time to time along the road. Although he did not intend to ticket the vehicle for a motor vehicle violation, once the vehicle left the highway and turned into a long driveway leading to a vacant house in a sparsely populated area, he followed the vehicle to a point where it stopped. After the Deputy activated his takedown lights, a woman attempted to exit the vehicle from the driver's seat, and the Deputy ordered her to return to the vehicle. His observation was that the woman resembled the picture of the woman in the flier. Subsequently, when other officers arrived following the Deputy's request for backup, the occupants were ordered out of the vehicle and were eventually searched and handcuffed, the vehicle was searched and the parties were formally placed under arrest.

Based upon all of the circumstances, including the time of day, the area where the vehicle eventually stopped, its proximity to the scene, some five miles from the Pavilion store that had been robbed, and the information gathered from the flier, there was probable cause to believe that the occupants of the vehicle were involved in the robbery of the Pavilion store. (Appeal from Judgment of Genesee County Court, Morton, J.— Robbery, 1st Degree.) Present—Lawton, J. P., Hayes, Callahan and Boehm, JJ.