■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL J. LAYOU, Appellant. [897 NYS2d 325]—

Appeal from a judgment of the Oswego County Court (Walter W. Hafner, Jr., J.), rendered February 2, 2009. The judgment convicted defendant, upon a jury verdict, of criminal possession of a controlled substance in the seventh degree, obstructing governmental administration in the second degree, and resisting arrest.

It is hereby ordered that the judgment so appealed from is unanimously reversed on the law, those parts of the motion seeking to suppress tangible property and statements are granted, the indictment is dismissed, and the matter is remitted to Oswego County Court for proceedings pursuant to CPL 470.45.

Memorandum: Defendant appeals from a judgment convicting him, upon a jury verdict, of criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), obstructing governmental administration in the second degree (§ 195.05), and resisting arrest (§ 205.30). We agree with the contention of defendant in his main brief that County Court erred in admitting in evidence the cocaine found on defendant's person and at the scene based on deficiencies in the chain of custody. Although "[g]aps in the chain of custody may be excused when circumstances provide reasonable assurances of the identity and unchanged condition of the evidence" (*People v Hawkins*, 11 NY3d 484, 494 [2008]), here the People failed to establish either a complete chain of custody or circumstances

providing the requisite reasonable assurances of the identity and unchanged condition of the evidence in question (*see People v Childs*, 29 AD3d 709, 710 [2006], *lv denied* 7 NY3d 787 [2006]; *People v Steiner*, 148 AD2d 980, 981 [1989]). The arresting officer testified at trial that he transported the drugs from the scene of defendant's arrest to the police station, where he placed the cocaine on a table in a room and left it there. He further testified that, almost a month later, he transported the drugs from the station to the crime laboratory for analysis. The arresting officer had no personal knowledge of the location of the drugs during the intervening time period, although he believed that they had been secured in the evidence room by another officer. That other officer did not testify at trial, however, and no other witness testified that he or she had secured the drugs in the evidence room after defendant's arrest or retrieved the drugs from the evidence room before they were taken by the arresting officer to the crime laboratory for testing approximately one month later. Thus, the trial testimony provides no assurances that the drugs seized from defendant were those analyzed at the crime laboratory (*see People v Gamble*, 94 AD2d 960 [1983], *lv denied* 60 NY2d 590 [1983]; *cf. People v Caldwell*, 221 AD2d 972 [1995], *lv denied* 87 NY2d 920 [1996]). We further note that there were significant weight discrepancies between the drugs seized from defendant and the drugs analyzed at the crime laboratory, and the People's witnesses failed to offer any reasonable explanation for the discrepancies.

In any event, we further conclude that the court erred in refusing to suppress the tangible property seized, i.e., the cocaine, and defendant's statements to the police. As defendant contends in his pro se supplemental brief, suppression was warranted because the police lacked reasonable suspicion to justify the initial seizure of his vehicle. Here, a police officer effectively seized defendant's vehicle when he pulled into the parking lot behind defendant's vehicle in such a manner as to prevent defendant from driving away (*see People v Solano*, 46 AD3d 1223, 1225 [2007], *lv denied* 10 NY3d 817 [2008]; *People v Nicodemus*, 247 AD2d 833, 835 [1998], *lv denied* 92 NY2d 858 [1998]; *cf. People v Ocasio*, 85 NY2d 982, 984-985 [1995]; *People v Black*, 59 AD3d 1050, 1051 [2009], *lv denied* 12 NY3d 851 [2009]). Defendant's presence in a vehicle at 3:40 A.M. in a parking lot located in the general vicinity of a burglary that the police were investigating did not provide the police with reasonable suspicion that defendant had committed, was committing, or was about to commit a crime (*see People v May*, 81 NY2d 725, 727-728 [1992]). It is well settled that "innocuous behavior alone will not generate a founded or reasonable suspicion that a

crime is at hand" (*People v De Bour*, 40 NY2d 210, 216 [1976]). In this case, the arresting officer did not observe any conduct indicative of criminal activity at the time he seized the vehicle, the complainant who had reported the burglary did not mention that the burglars fled in a vehicle, and the officer had no other information tending to connect defendant or the occupant of his vehicle with the reported burglary (*see Nicodemus*, 247 AD2d at 835; *see generally People v Taylor*, 31 AD3d 1141, 1142 [2006]). Thus, even if there had been a sufficient chain of custody, we nevertheless conclude that the judgment must be reversed in its entirety, including those parts convicting defendant of resisting arrest and obstructing governmental administration (*see Matter of Marlon H.*, 54 AD3d 341 [2008]; *People v Lupinacci*, 191 AD2d 589 [1993]), inasmuch as the police acted without the requisite reasonable suspicion to justify the initial seizure of defendant's vehicle. Present—Smith, J.P., Peradotto, Carni, Pine and Gorski, JJ.