People v Wallace (2020 NY Slip Op 01796)





People v Wallace


2020 NY Slip Op 01796


Decided on March 13, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 13, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CENTRA, LINDLEY, CURRAN, AND DEJOSEPH, JJ.


282 KA 16-00426

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
RICKY P. WALLACE, DEFENDANT-APPELLANT. 






MARK D. FUNK, CONFLICT DEFENDER, ROCHESTER (KATHLEEN P. REARDON OF COUNSEL), FOR DEFENDANT-APPELLANT. 
RICKY P. WALLACE, DEFENDANT-APPELLANT PRO SE.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LISA GRAY OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Monroe County Court (Thomas R. Morse, A.J.), rendered December 15, 2015. The judgment convicted defendant upon a jury verdict of criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law, those parts of the omnibus motion seeking to suppress physical evidence and statements are granted, the indictment is dismissed, and the matter is remitted to Monroe County Court for proceedings pursuant to CPL 470.45.
Memorandum: On appeal from a judgment convicting him upon a jury verdict of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]), defendant contends in his main and pro se supplemental briefs that County Court (Dinolfo, J.) erred in refusing to suppress the physical evidence seized from him and his subsequent statements to the police. We agree.
The evidence at the suppression hearing establishes that the arresting officer was on routine patrol in what he described as a high-crime area known to be an "open air drug market," where there had also been numerous burglaries and robberies. That officer had been a member of the police force for only a few months, and he was under the supervision of a training officer. The arresting officer testified that he observed defendant walking on a sidewalk shortly after midnight on a chilly night, with temperatures near 40 degrees, and that defendant was wearing a mask that covered the lower part of his face. The officer had not received any reports of recent crimes in the area, was not responding to any call, and did not observe defendant engage in any illegal activity. The officer pulled his patrol vehicle in front of defendant's path of travel, exited the patrol vehicle along with the training officer, approached defendant, and asked defendant why he was wearing a mask. Defendant replied that he was walking his dog, and the unchallenged evidence at the hearing establishes that he was indeed walking a dog. The arresting officer testified that the training officer asked defendant what was in a bag, which defendant was apparently holding, and defendant replied that it was "weed." The arresting officer then frisked defendant and recovered a firearm. Defendant thereafter made admissions regarding that weapon.
In People v De Bour (40 NY2d 210, 223 [1976]), the Court of Appeals provided a "graduated four-level test for evaluating street encounters initiated by the police" (People v Moore, 6 NY3d 496, 498 [2006]). Under De Bour, insofar as relevant here, "level one permits a police officer to request information from an individual and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality; level two, the common-law right of inquiry, permits a somewhat greater intrusion and requires a founded [*2]suspicion that criminal activity is afoot; level three authorizes an officer to forcibly stop and detain an individual, and requires a reasonable suspicion that the particular individual was involved in a felony or misdemeanor" (Moore, 6 NY3d at 498-499). Here, defendant contends that the officers lacked the requisite reasonable suspicion of criminal activity for a De Bour level three encounter or the founded suspicion required for a level two encounter.
In determining whether an officer had the requisite basis to support the level of intrusion that occurred, the suppression court must consider the totality of circumstances (see generally People v Mercado, 120 AD3d 441, 442 [1st Dept 2014], affd 25 NY3d 936 [2015]). In addition, the court must determine " whether the officer's action was justified at its inception' " (People v William II, 98 NY2d 93, 98 [2002]) and, because " police-citizen encounters are dynamic situations during which the degree of belief possessed at the point of inception may blossom by virtue of responses or other matters which authorize and indeed require additional action as the scenario unfolds' " (People v Perez, 31 NY3d 964, 966 [2018]), whether any subsequent escalation of the intrusion by the officer is supported by the requisite level of suspicion (see e.g. People v Pettiford, 173 AD3d 1716, 1716-1717 [4th Dept 2019], lv denied 34 NY3d 936 [2019]; see generally People v Nicodemus, 247 AD2d 833, 835 [4th Dept 1998], lv denied 92 NY2d 858 [1998]). Here, assuming, arguendo, that the arresting officer had the requisite "objective, credible reason, not necessarily indicative of criminality" to support his approach and his initial question to defendant regarding defendant's face mask (Moore, 6 NY3d at 498), we conclude "the People failed to meet their burden of establishing the legality of the police conduct" that occurred thereafter (People v Carr, 103 AD3d 1194, 1195 [4th Dept 2013]; see generally People v Wise, 46 NY2d 321, 329 [1978]; People v Baldwin, 25 NY2d 66, 70-71 [1969]).
The evidence at the hearing establishes that, after the arresting officer asked defendant why he was wearing the mask, the training officer asked defendant what was in the bag defendant was holding. There is no evidence regarding why the training officer did so. The evidence at the hearing further establishes that the arresting officer, who was the People's only witness at the hearing, did not see the bag before the training officer asked what was in it. Because the training officer engaged in a level two intrusion, i.e., "a more pointed inquiry into [defendant's] activities" (People v Doll, 98 AD3d 356, 367 [4th Dept 2012], affd 21 NY3d 665 [2013], rearg denied 22 NY3d 1053 [2014], cert denied 572 US 1022 [2014]), by asking "invasive question[s] focusing on the possible criminality of the subject" (People v Hightower, 136 AD3d 1396, 1397 [4th Dept 2016] [internal quotation marks omitted]; see People v Hollman, 79 NY2d 181, 191-192 [1992]), the People were required to demonstrate that the training officer had "a founded suspicion that criminal activity [was] afoot" (Moore, 6 NY3d at 498).
The People's reliance on the training officer's trial testimony that he asked defendant if he had any weapons and that defendant said that he did not is misplaced. "It is well settled that evidence subsequently admitted [at] trial cannot be used to support [or undermine] the determination of the suppression court denying [a] motion to suppress . . . ; the propriety of the denial must be judged on the evidence before the suppression court' " (People v Lane, 106 AD3d 1478, 1479 [4th Dept 2013], lv denied 21 NY3d 1043 [2013], quoting People v Gonzalez, 55 NY2d 720, 721-722 [1981], rearg denied 55 NY2d 1038 [1982], cert denied 456 US 1010 [1982]; see People v Carmona, 82 NY2d 603, 610 n 2 [1993]). Based on the evidence at the suppression hearing, the People failed to meet their burden of establishing that the training officer had the requisite founded suspicion (see Carr, 103 AD3d at 1195). Thus, we conclude that the training officer's inquiry and the subsequent frisk of defendant by the arresting officer was not a proper escalation of the level one encounter.
We further conclude that the frisk of defendant and seizure of the gun was not justified "as having been in the interests of the officer['s] safety, since there was no testimony that the [arresting] officer[ ] believed defendant to be carrying a weapon . . . , and the People presented no other evidence establishing that the [arresting] officer had reason to fear for his safety" (People v Roberts, 158 AD3d 1141, 1143 [4th Dept 2018] [internal quotation marks omitted]; cf. People v Fletcher, 130 AD3d 1063, 1065 [2d Dept 2015], affd 27 NY3d 1177 [2016]; People v Fagan, 98 AD3d 1270, 1271 [4th Dept 2012], lv denied 20 NY3d 1061 [2013], cert denied 571 US 907 [2013]). We therefore reverse the judgment, grant those parts of defendant's omnibus motion seeking to suppress the physical evidence seized and his subsequent statements, and dismiss the indictment.
In light of our determination, defendant's remaining contentions
in his main and pro se supplemental briefs are academic.
Entered: March 13, 2020
Mark W. Bennett
Clerk of the Court