People v Sutton (2020 NY Slip Op 03400)





People v Sutton


2020 NY Slip Op 03400


Decided on June 17, 2020


Appellate Division, Second Department


Scheinkman, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 17, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
LEONARD B. AUSTIN
JEFFREY A. COHEN
SYLVIA O. HINDS-RADIX, JJ.


2016-07006
 (Ind. No. 3032/14)

[*1]The People of the State of New York, respondent,
v
Darrius Sutton, appellant.



APPEAL by the defendant from a judgment of the Supreme Court (Elizabeth Foley, J.), rendered June 23, 2016, and entered in Kings County, convicting him of assault in the second degree, upon his plea of guilty, and imposing sentence.



Paul Skip Laisure, New York, NY (Charity L. Brady of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Keith Dolan of counsel; Ruby D. Andrade on the brief), for respondent.



SCHEINKMAN, P.J.


OPINION & ORDER
INTRODUCTION:
On this appeal we hold that the defendant's purported waiver of the right to appeal is unenforceable because it was the court itself, as opposed to the People, that insisted upon the waiver, without setting forth any reason for doing so, and because the defendant received no benefit, discernible on this record, in exchange for relinquishment of the fundamental right to appeal. However, upon reviewing the defendant's appellate claims, we affirm the defendant's conviction on the merits.
FACTUAL AND PROCEDURAL BACKGROUND:
On March 26, 2014, two days before his 17th birthday, the defendant punched a 17-year-old female in the face and allegedly displayed a gun that he was carrying in the waistband of his pants. The complainant sustained a fractured jaw, and required a metal plate and several screws to hold the jaw in place for six months. For his actions, the defendant was charged in an indictment with assault in the second degree, attempted assault in the second degree, assault in the third degree, menacing in the second degree, menacing in the third degree, and harassment in the second degree. In a decision and order dated July 28, 2014, the Supreme Court, upon its review of the grand jury minutes, held that the evidence before the grand jury was legally sufficient to sustain the charges set forth in the indictment. The court ruled that the legal instructions given to the grand jury were adequate and proper. The court concluded that no reduction of any count in the indictment was warranted.
At a proceeding on March 9, 2015, the People stated that their offer was a plea of guilty to the top count of the indictment and a waiver of the right to appeal in exchange for a youthful offender adjudication, a sentence consisting of a term of imprisonment of 1&frac13; to 4 years, and a full order of protection. However, the Supreme Court, citing the defendant's youth, stated that it intended to "undercut" the People's bargaining position by offering the defendant its own alternative deal. The court proposed that the defendant plead guilty to the top count of the indictment and enter an outpatient program operated by the Center for Alternative Sentencing and Employment Services (hereinafter CASES). The court posited that, if the defendant successfully completed the program, he would be adjudicated a youthful offender and receive a definite sentence of one year, which he had already served. The court's offer provided that, if the defendant did not [*2]successfully complete the program, he would receive a sentence of up to two years of imprisonment followed by two years of post release supervision, and a youthful offender adjudication would be considered but not promised. The People noted their objection to this plea offer. Defense counsel immediately stated that the defendant had authorized him to enter a plea in accordance with the court's promised disposition. The court then proceeded to conduct a plea colloquy.
The Supreme Court carefully examined the defendant to assure itself that the defendant understood that he was relinquishing his Boykin rights (see Boykin v Alabama, 395 US 238), that he understood the plea and the sentence promised, and that he was voluntarily pleading guilty because he was in fact guilty. The court then elicited from the defendant that he had punched the complainant in the face and broken her jaw. At the conclusion of the allocution, the prosecutor stated that the allocution was acceptable to the People, whereupon the court stated that the plea was acceptable to the court.
At this juncture, the following occurred:
"[DEFENSE COUNSEL]: "I'm sorry, Your Honor, the People did hand over the waiver of the right to appeal, but the Court isn't going to require this?
"THE COURT: I'm not?
"[DEFENSE COUNSEL]: It's the Court's offer, not the People's offer.
"THE COURT: I'm requiring it.
"[DEFENSE COUNSEL]: Okay.
"THE COURT: Because it is part of the deal."
The Supreme Court proceeded to conduct a colloquy as to whether the defendant had signed the appeal waiver form provided by the People and had done so knowingly and voluntarily. The defendant acknowledged signing the form and having had sufficient time to discuss the matter with counsel before doing so. The court had the defendant acknowledge that he was waiving his right to appeal any issue that may arise from the case, including the sentence. The court had the defendant acknowledge his understanding that "a waiver of the right to appeal is not a legal requirement of every guilty plea, but part of the negotiations of this plea." At the conclusion of the colloquy, the court found that the defendant had made a knowing and voluntary waiver of his right to appeal and signed the appeal waiver form [FN1]. The written waiver form advised the defendant that he had the right to appeal and "have the proceedings reviewed by an appellate court." The form provided that the defendant, "[a]s a condition of this particular plea," waived his "right to appeal [his] sentence and conviction."
The defendant failed to complete the CASES program because he did not attend school, but at a proceeding on September 29, 2015, the Supreme Court gave the defendant the opportunity to complete an inpatient program. The defendant later absconded from the inpatient program, and a bench warrant was issued on January 8, 2016. The defendant was subsequently arrested and charged with marijuana possession. The defendant allegedly escaped from a transport van, ran several blocks, and attacked and repeatedly bit the pursuing police officer, leading to a new assault charge.
On June 23, 2016, the Supreme Court determined that the defendant had violated the terms of the plea agreement, denied the defendant youthful offender treatment, and sentenced him to two years of imprisonment followed by two years of postrelease supervision. The defendant appeals, contending that the court improvidently exercised its discretion in denying him youthful offender treatment, and that his sentence was excessive. The defendant cites, among other things, his youth, lack of a prior criminal record, a traumatic childhood, and a history of depression. The People contend that the defendant's claims are foreclosed by his waiver of the right to appeal and, in any event, without merit.
THE WAIVER OF THE RIGHT TO APPEAL:
The defendant contends that his purported waiver of the right to appeal is invalid because, among other things, the Supreme Court itself, as opposed to the People, insisted upon the waiver as a condition of its acceptance of the plea, and because the court did not discuss the waiver until after he had already fully admitted his guilt. The People defend the validity of the waiver, arguing that the decision of the Appellate Division, Third Department, in People v Gilbert (145 AD3d 1196) disposes of the defendant's claim that the waiver is invalid because the Supreme Court insisted upon it.
While neither the People nor the defendant are compelled to participate in plea negotiations, plea bargaining is established as a vital part of our criminal justice system (see People v Thomas, 34 NY3d 545, 557-558; People v Seaberg, 74 NY2d 1, 7-8). For the parties, achieving a settlement provides a prompt conclusion to litigation, avoids delay, and removes the risks and uncertainties of trials (see People v Thomas, 34 NY3d at 557-558; People v Seaberg, 74 NY2d at 7; People v Selikoff, 35 NY2d 227, 232-233). The accused is afforded the opportunity, as part of a plea bargain, to gain the benefit of a reduction in the charges brought and consequently more lenient punishment (see People v Thomas, 34 NY3d at 557-558; People v Selikoff, 35 NY2d at 233-234). Plea bargaining, when successful, conserves judicial resources and provides finality in criminal proceedings (see People v Thomas, 34 NY3d at 557-558; People v Tiger, 32 NY3d 91, 101).
The court's principal role during plea negotiations is to "insure the reasonableness of the bargain struck" between the People and the defendant and of the sentence ultimately imposed (People v Seaberg, 74 NY2d at 8; see People v Farrar, 52 NY2d 302, 306; People v McConnell, 49 NY2d 340, 346; People v Selikoff, 35 NY2d at 238-240). The court is not bound to impose a sentence negotiated between the prosecutor and the defendant, even if the court purportedly made a commitment to the prosecutor at the time of the plea (see People v Farrar, 52 NY2d at 305). However, where the record shows that the prosecutor's consent to a plea is premised on a negotiated sentence and a court later deems a lesser sentence more appropriate, the People should be given the opportunity to withdraw their consent (see id. at 307-308).
A reduction in the severity of the charges, as part of a negotiation, requires the consent of both the People and the court (see CPL 220.10; People v Selikoff, 35 NY2d at 241). Another form of bargaining relates to the sentence that may be imposed upon a plea to unreduced charges. In this circumstance, the consent of the People is not required since the charges remain as presented (see CPL 220.10[2]). The sentencing responsibility is primarily, if not exclusively, with the court, whose ultimate obligation is to impose an appropriate sentence and who must exercise its responsibility at the time of sentencing in light of the information obtained from the presentence report or other sources (see People v Farrar, 52 NY2d at 306). Where the court has made a sentence promise to a defendant, the court must fulfill it, provided there is nothing contained in the presentence report or in later learned facts rendering improvident the sentence promised (see People v Selikoff, 35 NY2d at 240). Where a court cannot or will not impose the promised sentence, it is required to specify on the record the information that is relied upon for the changed view and afford the defendant the opportunity to withdraw the plea of guilty (see id. at 241).
The present case involves the second form of criminal case settlement, a resolution predicated upon the defendant's plea to an unreduced charge with the plea given on the basis of the defendant's understanding as to the court's anticipated sentence. The People's consent was not required and here the People opposed the Supreme Court's proposed sentence. As the court's proposal was more lenient than the People's offer, the court recognized that its proposal "undercut" the People's negotiating stance. Sentence bargaining is not plea bargaining in the sense that the severity of the offense to be pleaded to is reduced; it is, however, plea bargaining in the sense that the defendant is bargaining for a benefit in exchange for a change in plea to guilty.
"[A] defendant has a fundamental right to appellate review of a criminal conviction" (People v Yavru-Sakuk, 98 NY2d 56, 59), including one rendered upon a plea of guilty (see NY Const, art VI, § 4[k]; CPL 450.10[1]; People v Callahan, 80 NY2d 273, 284). Nevertheless, in People v Seaberg (74 NY2d at 10), the Court of Appeals found "no public policy precluding defendants from waiving their rights to appeal as a condition of the plea and sentence bargains."
We have seen any number of appeal waiver colloquies where the trial courts have explained appeal rights and the significance of their waiver to defendants by stating that the court is requiring the defendant to waive the right to appeal as part of the plea negotiations. Such explanations are inartful where the reality, understood by the defendant, is that the prosecutor had bargained for the appeal waiver and thus it was the prosecutor, not the court, that was requiring the waiver. While trial courts should take care to properly identify the requestor of the appeal waiver, a mistaken identification of the source of the request during a waiver colloquy can hardly be considered harmful where the record reflects that the defendant understood from whence the waiver [*3]request emanated.
In this case, the defendant argues that the purported waiver of the right to appeal is invalid because the Supreme Court stepped outside of its role to protect the integrity of the process by itself insisting upon the waiver of the right to appeal. The defendant maintains that since an appeal would entail a review of the court's decisions in this case, in particular the denial of youthful offender treatment, the court's imposition of a requirement of an appeal waiver betokens an intention on the part of the court to shield its decisions from appellate review (see United States v Gonzalez-Melchor, 648 F3d 959, 964 [9th Cir]).
There is a paucity of precedent in this State to guide our determination. The concern has been expressed by defense counsel that trial judges may encourage the use of appeal waivers in order to insulate their decisions from appellate review and thus avoid reversals. While we cannot say that such concerns are fanciful, there is no empirical basis for concluding that this phenomenon is a regular or even common occurrence (see Nancy J. King & Michael E. O'Neill, Appeal Waivers and the Future of Sentencing Policy, 55 Duke LJ 209, 247-248 [2005]). Nonetheless, there is good reason to hesitate before enforcing an appeal waiver where that waiver has been solicited by the court, rather than by the prosecutor. The trial courts are called upon to safeguard the integrity of the appeal waiver process, and their effectiveness in that role may be compromised when the court itself has initiated the process (see People v Towns, 33 NY3d 326 [holding that the trial court improperly abandoned the role of a neutral arbiter and assumed the function of an interested party by negotiating and entering into a cooperation agreement with a codefendant requiring that individual to testify against the defendant in exchange for a more favorable sentence]).
The Seaberg decision proceeds on at least the implied predicate that negotiating with the defendant for the inclusion in the bargain of an appeal waiver is the prerogative of the People. The Seaberg Court explained that plea bargaining "provides a means where, by mutual concessions, the parties may obtain a prompt resolution of criminal proceedings with all the benefits that enure from final disposition" (People v Seaberg, 74 NY2d at 7 [emphasis added]). Plea bargaining "enables the parties to avoid the delay and uncertainties of trial and appeal and permits swift and certain punishment of law violators with sentences tailored to the circumstances" (id. [emphasis added]; see Santobello v New York, 404 US 257, 261; People v Selikoff, 35 NY2d at 233-235; see also People v Farrar, 52 NY2d at 306-307 ["In considering whether to permit a defendant to plead to a lesser offense, the prosecutor legitimately may consider and negotiate a penalty that he or she deems necessary to serve the interests of the People."]). The Seaberg Court concluded that because "the public interest concerns underlying plea bargains generally are served by enforcing waivers of the right to appeal," "the People need not particularize some legitimate State interest to justify conditioning a plea bargain on defendant's waiver of the right to appeal" (People v Seaberg, 74 NY2d at 10 [emphasis added; internal quotation marks omitted]; see People v Batista, 167 AD3d 69, 82 [stating that the waiver of the right to appeal "is given as part of the consideration for the plea being offered to the defendant by the People"]).
Seaberg viewed the role of the trial court as being to superintend the fairness of the appeal waiver process. It had been contended in that case that appeal waivers should be unenforceable in order to protect defendants from misconduct and coercion in the pleading process and to ensure fairness in sentencing. Seaberg concluded that these concerns did not warrant a prohibition on appeal waivers since the trial courts could be depended upon to insure the reasonableness of the bargain struck and of the sentence imposed (see People v Seaberg, 74 NY2d at 9). The centrality of the trial court's role as policing the integrity of appeal waivers was recently confirmed in People v Thomas (34 NY3d at 558), where the Court of Appeals held that there was "no public policy reason to depart from Seaberg and its progeny today, as carefully-constructed and counseled appeal waivers—with the terms memorialized on the record and executed under the supervision of the trial courts—continue to serve the same worthy objectives, as they have for the last three decades."
In Garza v Idaho (_____ US _____, 139 S Ct 738, 745), the United States Supreme Court noted that "even a waived appellate claim can still go forward if the prosecution forfeits or waives the waiver" (see also id. at 747 n 10; United States v Story, 439 F3d 226, 231 [5th Cir]). Following Garza, this Court has not enforced waivers of the right to appeal where the People do not seek to enforce such a waiver. This further suggests that an appeal waiver once granted by the defendant belongs to the People and that, accordingly, whether to seek the inclusion of an appeal waiver in a plea bargain is the prerogative of the People. We further note that, unlike the People, the trial court does not participate in an appeal, and thus does not have the same interest in achieving finality to the case.
We do not foreclose the possibility that there may be circumstances where the trial [*4]court has a legitimate interest in conditioning its acceptance of a plea and determination of a sentence upon an appeal waiver that the prosecution has not requested. While the prosecution need not articulate any reason for including a demand for an appeal waiver in its settlement offer, where it is the court that makes the demand, the court should articulate on the record its reasons for doing so in order to dispel any concern that the court's demand is motivated solely as a means of avoiding appellate review of its decisions. Here, the Supreme Court did not set forth any reason for demanding an appeal waiver, and none is apparent on the record. Accordingly, we will not enforce the defendant's purported waiver of the right to appeal.
Contrary to the People's contention, People v Gilbert (145 AD3d 1196) does not stand for the proposition that a court has the unlimited authority to itself demand an appeal waiver as a condition for judicial action. The defendant's argument in that case was not that the waiver was invalid because the court itself insisted upon it. The defendant's argument in Gilbert was that the waiver was invalid because, at the time that he accepted the plea bargain, he was unaware that the waiver of the right to appeal would be a condition of the plea (see id. at 1196). The Appellate Division, Third Department, rejected this argument because, although the appeal waiver was not mentioned when the terms of the plea agreement were initially placed on the record, the defendant was informed during the plea colloquy, and prior to pleading guilty, that a waiver of the right to appeal was part of the plea bargain (see id.; see also People v Sahler, 168 AD3d 1313, 1314).
The Gilbert and Sahler cases actually demonstrate an additional reason why the defendant's purported appeal waiver in this case was invalid, aside from the fact that it was the Supreme Court that requested it. In contrast to the Gilbert and Sahler cases, the appeal waiver here was not mentioned by the court prior to the defendant's plea of guilty, but only afterwards. While an appeal waiver is acceptable "as a condition of the plea and sentence bargains" (People v Seaberg, 74 NY2d at 10; see People v Lopez, 6 NY3d 248, 257), here the defendant received no material benefit from his appeal waiver, as the court had already accepted the defendant's plea and made its sentence promise (cf. People v Holman, 89 NY2d 876, 878 [in upholding an appeal waiver, stating that it was the defendant's "choice to accept a lighter sentence rather than risk the delay and outcome of an appeal or a new trial," and that "[h]aving made his choice, there is no reason for this Court to interfere"]). Thus, the court's insistence upon the execution of an appeal waiver was a gratuitous, after-the-fact additional demand asserted after the bargain had already been struck.
Accordingly, we will not enforce the defendant's purported waiver of the right to appeal, and we reach the merits of his appellate contentions.
THE MERITS OF THE DEFENDANT'S APPEAL:
"If in the opinion of the court the interest of justice would be served by relieving [an] eligible youth from the onus of a criminal record and by not imposing an indeterminate term of imprisonment of more than four years, the court may, in its discretion, find the eligible youth is a youthful offender" (CPL 720.20[1][a]). "In making such a determination, factors to be considered by the court include the gravity of the crime and manner in which it was committed, mitigating circumstances, defendant's prior criminal record, prior acts of violence, recommendations in the presentence reports, defendant's reputation, the level of cooperation with authorities, defendant's attitude toward society and respect for the law, and the prospects for rehabilitation and hope for a future constructive life'" (People v Sheldon O., 169 AD3d 1062, 1063, quoting People v Cruickshank, 105 AD2d 325, 334, affd sub nom. People v Dawn Maria C., 67 NY2d 625).
Here, notwithstanding the mitigating factors identified by the defendant, in light of the gravity of the crime, the defendant's repeated failure to comply with the terms of his plea agreement, his act of absconding, and his new arrests, including an arrest for biting a police officer, the Supreme Court providently exercised its discretion in denying the defendant youthful offender treatment (see People v Wills, 144 AD3d 952, 952-953; People v Hesterbey, 121 AD3d 1127, 1128). Moreover, the sentence of two years of imprisonment followed by two years of postrelease supervision was not excessive (see People v Suitte, 90 AD2d 80).
CONCLUSION:
For the foregoing reasons, we affirm the judgment of conviction on the merits.
AUSTIN, COHEN and HINDS-RADIX, JJ., concur.
ORDERED that the judgment is affirmed.
ENTER:
Aprilanne Agostino
Clerk of the Court



Footnotes

Footnote 1: The written appeal waiver form was not signed by defense counsel.