People v Wright (2021 NY Slip Op 03675)





People v Wright


2021 NY Slip Op 03675


Decided on June 11, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 11, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, CENTRA, TROUTMAN, AND WINSLOW, JJ.


10 KA 19-00349

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
KIRKLAN WRIGHT, DEFENDANT-APPELLANT. 






FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (CAITLIN M. CONNELLY OF COUNSEL), FOR DEFENDANT-APPELLANT. 
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (DARIENN P. BALIN OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Onondaga County Court (Matthew J. Doran, J.), rendered December 21, 2018. The judgment convicted defendant upon his plea of guilty of criminal possession of a weapon in the third degree, resisting arrest and false personation. 
It is hereby ORDERED that the judgment so appealed from is reversed on the law, the plea is vacated, that part of the second omnibus motion seeking to suppress physical evidence and statements is granted, the indictment is dismissed, and the matter is remitted to Onondaga County Court for proceedings pursuant to CPL 470.45.
Memorandum: Defendant appeals from a judgment convicting him upon his plea of guilty of criminal possession of a weapon in the third degree (Penal Law § 265.02 [1]), resisting arrest (§ 205.30), and false personation (§ 190.23). Defendant contends that County Court erred in denying that part of his second omnibus motion seeking suppression of physical evidence and oral statements he made to the police. We agree.
The testimony at the suppression hearing established that, at approximately 11:55 p.m. on the night in question, a uniformed police officer and two fellow officers were on patrol when the officers spotted two men walking along a street. According to one officer, one of the men "appeared to have an open container, open alcoholic beverage container, taller can inside a paper bag." The testifying officer explained that "people attempt to hide open containers, alcoholic beverage containers, in paper bags, plastic bags, so we can't see the container and I have made it a practice of mine to stop pretty much everyone I see that has a—has similar to that, what I believe to be an open container." All three officers exited the marked patrol car in which they were riding and immediately began "notifying the male with what we believe to be an open container, the open alcoholic beverage, that we're checking to see if the alcoholic beverage is closed." The testifying officer explained that he then approached defendant because, as the officers approached, defendant "separate[d] himself, enter[ed] a driveway, just partially enter[ed] a driveway on the north side of the street and then blade[d] his body to us while kind of grabbing at his right waistband area." It is well settled that, "[i]n evaluating police conduct, a court 'must determine whether the action taken was justified in its inception and at every subsequent stage of the encounter' " (People v Savage, 137 AD3d 1637, 1638 [4th Dept 2016]; see People v Perez, 31 NY3d 964, 966 [2018]; see generally People v De Bour, 40 NY2d 210, 222-223 [1976]). At the first level of a police-civilian encounter, i.e., a request for information, a police officer may approach an individual "when there is some objective credible reason for that interference not necessarily indicative of criminality" (De Bour, 40 NY2d at 223), and "[t]he request may 'involve[] basic, nonthreatening questions regarding, for instance, identity, address or destination' " (People v Garcia, 20 NY3d 317, 322 [2012], quoting People v Hollman, 79 NY2d 181, 185 [1992]). "The next degree, the common-law right to inquire, is activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion in that a [police officer] is entitled to interfere with a citizen to the extent necessary to gain explanatory [*2]information, but short of a forcible seizure" (De Bour, 40 NY2d at 223).
Here, even assuming, arguendo, that the officers possessed a level one right to approach defendant and his companion (cf. People v Mercado, 178 AD2d 986, 986 [4th Dept 1991], lv denied 79 NY2d 951 [1992]), the officers nonetheless immediately "engaged in a level two intrusion, i.e., 'a more pointed inquiry into [the] activities [of defendant and his companion]' . . . , by asking 'invasive question[s] focusing on the possible criminality of the subject' " (People v Wallace, 181 AD3d 1214, 1216 [4th Dept 2020]; cf. People v Doll, 98 AD3d 356, 367 [4th Dept 2012], affd 21 NY3d 665 [2013], rearg denied 22 NY3d 1053 [2014], cert denied 572 US 1022 [2014]). Notably, the officers did not see defendant or his companion drinking from whatever item was in the paper bag, and there were no other attendant circumstances indicative of criminal behavior that would warrant the more pointed inquiry at the outset (see Wallace, 181 AD3d at 1216; cf. People v Mack, 49 AD3d 1291, 1292 [4th Dept 2008], lv denied 10 NY3d 866 [2008]). We therefore reverse the judgment, vacate the plea, grant that part of defendant's second omnibus motion seeking to suppress physical evidence and oral statements, and dismiss the indictment.
All concur except Centra and Winslow, JJ., who dissent and vote to affirm in the following memorandum: We respectfully dissent. The majority concludes that County Court erred in denying that part of defendant's second omnibus motion seeking the suppression of physical evidence and oral statements. In our view, the police officers had an objective, credible reason to approach defendant and request information (see People v De Bour, 40 NY2d 210, 223 [1976]), and "the action taken was justified in its inception and at every subsequent stage of the encounter" (People v Nicodemus, 247 AD2d 833, 835 [4th Dept 1998], lv denied 92 NY2d 858 [1998]; see De Bour, 40 NY2d at 215, 222-223). We would therefore affirm the judgment.
Defendant was initially observed by the police as he was walking down a street next to a man who was holding a tall can inside a paper bag. As the officers approached them and began speaking to defendant's companion, defendant separated from his companion and moved into a nearby driveway while touching his waistband area. Defendant turned the right side of his body away from the officers while grabbing at his right waistband area with his right hand, and an officer approached defendant and asked him his name and date of birth. Defendant gave the officer a name, but his speech was broken and delayed, and he seemed nervous. The officer testified that he believed that defendant gave a false name inasmuch as the officer believed that defendant was actually another individual with a different name than the one defendant had provided. Defendant said his date of birth was "1/86/87". Concerned for his safety, an officer decided to conduct a pat frisk of defendant, and a handgun was recovered from defendant's front right pocket.
As set forth by the majority, under level one of the De Bour analysis, officers need an objective, credible reason to approach and request information (see De Bour, 40 NY2d at 223). "The request may 'involve[] basic, nonthreatening questions regarding, for instance, identity, address or destination' " (People v Garcia, 20 NY3d 317, 322 [2012], quoting People v Hollman, 79 NY2d 181, 185 [1992]). We reject defendant's contention that there was no objective, credible reason for the officers' approach. In our view, the actions of defendant that drew the attention of one of the officers gave that officer, at a minimum, an objective, credible reason to approach defendant and ask him his name and date of birth (see generally People v Britt, 160 AD3d 428, 429-430 [1st Dept 2018], affd 34 NY3d 607 [2019]), and it is of no moment that defendant's companion rather than defendant was the person carrying what the officers believed to be an open container of alcohol (see People v Mack, 49 AD3d 1291, 1292 [4th Dept 2008], lv denied 10 NY3d 866 [2008]).
The majority assumes, arguendo, that the officers possessed a level one right to approach defendant and his companion but concludes that the officers improperly engaged in a level two intrusion under
De Bour by asking invasive questions focused on criminality. We disagree. The majority relies on the officers' questions to defendant's companion about the can he was carrying. The testimony at the suppression hearing establishes that an officer asked defendant only questions about his identity, which were clearly permissible under level one of De Bour.
Furthermore, we reject defendant's contention that the officers did not have reasonable [*3]suspicion to believe that he posed a threat to their safety when the pat frisk was conducted. Defendant's actions in shielding the right side of his body away from the officers' view while grabbing at his right waistband area and his nonsensical response when asked for his date of birth, combined with the belief of one of the officers that defendant had provided a false name, gave rise to a reasonable suspicion that defendant was armed and posed a threat to the officers' safety, thereby justifying the pat frisk (see Terry v Ohio, 392 US 1, 27 [1968]; De Bour, 40 NY2d at 223; People v Wiggins, 126 AD3d 1369, 1370 [4th Dept 2015]; see also CPL 140.50 [1], [3]).
Entered: June 11, 2021
Mark W. Bennett
Clerk of the Court