People v Turner

2026 NY Slip Op 02557

April 24, 2026

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

v

ROBERT TURNER, DEFENDANT-APPELLANT.

Supreme Court of the State of New York, Appellate Division, Fourth Judicial Department

Decided on April 24, 2026

241 KA 23-00922

Present: Whalen, P.J., Bannister, Smith, Nowak, And Delconte, JJ.

THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (NICHOLAS P. DIFONZO OF COUNSEL), FOR DEFENDANT-APPELLANT.

MICHAEL J. KEANE, DISTRICT ATTORNEY, BUFFALO (APRIL J. ORLOWSKI OF COUNSEL), FOR RESPONDENT.

Appeal from a judgment of the Supreme Court, Erie County (Betty Calvo-Torres, A.J.), rendered April 3, 2023. The judgment convicted defendant upon a plea of guilty of criminal possession of a weapon in the second degree and criminal possession of a controlled substance in the fourth degree.

[*1]

It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law, the plea is vacated, that part of the omnibus motion seeking to suppress physical evidence is granted, the indictment is dismissed, and the matter is remitted to Supreme Court, Erie County, for proceedings pursuant to CPL 470.45.

Memorandum: Defendant appeals from a judgment convicting him upon his plea of guilty of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]) and criminal possession of a controlled substance in the fourth degree (§ 220.09 [1]). We reverse.

Preliminarily, we agree with defendant that, under "the totality of the circumstances" presented here, his waiver of the right to appeal is invalid (People v Thomas, 34 NY3d 545, 559 [2019], cert denied 589 US 1302 [2020]; see People v Nixon, — AD3d —, — [Apr. 24, 2026] [4th Dept 2026] [decided herewith]). Consistent with our "responsibility to oversee the [plea] process and to review the record to ensure that the defendant's waiver of the right to appeal reflects a knowing and voluntary choice" (People v Callahan, 80 NY2d 273, 280 [1992]; see Thomas, 34 NY3d at 559), we must look at "all the relevant facts and circumstances surrounding the waiver, including the nature and terms of the agreement" (Thomas, 34 NY3d at 559-560 [internal quotation marks omitted]), and, as necessary, "address our concern that trial judges may encourage the use of appeal waivers in order to insulate their decisions from appellate review and thus avoid reversals" (Nixon, — AD3d at — [internal quotation marks omitted]). Thus, pursuant to the long-standing principle that "[n]ot only must judges actually be neutral, they must appear so as well" (People v Novak, 30 NY3d 222, 226 [2017]), "where a waiver of the defendant's right to appeal is a condition of a court-initiated plea agreement that does not require the People's consent, the waiver is invalid and unenforceable unless it is apparent from the record that the court had a distinct and proper reason to demand the waiver and foreclose judicial review at the time the demand was made" (Nixon, — AD3d at —).

Here, according to the testimony at the suppression hearing, two Buffalo Police Department officers received a dispatch report to respond to a residential address based on an anonymous 911 phone tip that an older Black man was knocking on the front door of that residence and arguing with a woman. The anonymous caller further reported overhearing the woman say to the man "why would you pull out a gun." The officers responded to the location and observed defendant, "an older [B]lack male on the [front] porch of [a neighboring house]." One of the officers approached defendant and asked if he could "pat him down." Although the officer testified that defendant unequivocally responded "yes" to his search request, the officer's [*2]body-worn camera (BWC) footage—which was admitted during the suppression hearing—instead records defendant responding, albeit faintly, to the officer's request with a question, namely, "For what?" The officer nonetheless proceeded to frisk defendant, and he recovered a handgun from defendant's jacket. A subsequent search of defendant incident to his arrest recovered narcotics. Following the hearing, Supreme Court denied suppression, concluding that "[t]he fact that the [BWC] failed to make an audible recording of defendant's response does not contradict or refute [the officer's] testimony" as to defendant's consent to a frisk.

Defendant thereafter pleaded guilty to the indictment upon his understanding that the court would impose the minimum sentence, to run concurrently, on both counts. While plea discussions were conducted off the record, defense counsel appropriately made a record of the fact that, although defendant requested to preserve his right to appeal the adverse suppression ruling, "the [c]ourt will not accept that . . . [and] will require [defendant] to waive all suppression issues except for illegalities in sentencing and other illegalities that would survive a waiver of appeal." Neither the court nor the prosecutor objected to, or otherwise qualified, defense counsel's assertion that the court had demanded defendant waive his right to appeal as a condition of the plea agreement.

Here, the consent of the People to the plea agreement was not required because the charges remained as presented (see CPL 220.10 [2]) and, thus, the People were not in a position to demand a waiver of defendant's right to appeal nor was such a waiver—or any other plea condition—necessary to secure the People's consent (see Nixon, — AD3d at —). It follows, then, that the court's demand of an appeal waiver, particularly as viewed in light of defendant's expressed desire to seek appellate review of the court's suppression ruling, "gives rise to the appearance that the court [was] seeking to shield its decisions from appellate review or otherwise act[ing] as an advocate for the People" and, therefore, "we must look to the record as a whole to determine whether there is a distinct and proper reason for the court's demand" (id. at —).

Although the record establishes that defendant received consideration for his waiver of the right to appeal inasmuch as he "secure[d] the benefit of the sentencing limitation promised by the court" (People v Figueroa, 230 AD3d 1581, 1583 [4th Dept 2024], lv denied 42 NY3d 1079 [2025]; see People v Allen, 174 AD3d 1456, 1456 [4th Dept 2019], lv denied 34 NY3d 978 [2019]; cf. People v Gramza, 140 AD3d 1643, 1643-1644 [4th Dept 2016], lv denied 28 NY3d 930 [2016]), the sentencing limitation does not constitute a distinct and proper reason for the court's demand of an appeal waiver because the court retains both the obligation and the discretion to impose sentence in light of the information subsequently obtained from the presentence report and other sources regardless of whether defendant waived his right to appeal (see People v Farrar, 52 NY2d 302, 306 [1981]; Nixon, — AD3d at —). Similarly, any perceived finality for the court derived from the appeal waiver following its denial of defendant's suppression motion does not constitute a distinct and proper reason for the demand of the waiver because, "unlike the People, the trial court does not participate in an appeal, and thus does not have the same interest in achieving finality to the case" (People v Sutton, 184 AD3d 236, 244 [2d Dept 2020], lv denied 35 NY3d 1070 [2020]).

Upon our review of the record here, including defense counsel's unrefuted assertion that the court unilaterally demanded an appeal waiver that would foreclose appellate review of its determination of defendant's suppression motion as a condition of the court-initiated plea agreement, we conclude that it is not apparent that the court had a distinct and proper reason to demand that waiver of defendant's right to appeal. Therefore, the waiver of the right to appeal is invalid and does not preclude our review of defendant's contentions.

We agree with defendant that the court erred in refusing to suppress physical evidence. "It is well established that, in evaluating the legality of police conduct, [a court] must determine whether the action taken was justified in its inception and at every subsequent stage of the encounter" (People v Burnett, 126 AD3d 1491, 1492 [4th Dept 2015] [internal quotation marks omitted]; see People v De Bour, 40 NY2d 210, 215 [1976]; People v Nicodemus, 247 AD2d 833, 835 [4th Dept 1998], lv denied 92 NY2d 858 [1998]). In De Bour, the Court of Appeals "set forth a graduated four-level test for evaluating street encounters initiated by the police: level one permits a police officer to request information from an individual and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality; [*3]level two, the common-law right of inquiry, permits a somewhat greater intrusion and requires a founded suspicion that criminal activity is afoot; level three authorizes an officer to forcibly stop and detain an individual, and requires a reasonable suspicion that the particular individual was involved in a felony or misdemeanor; [and] level four, arrest,

requires probable cause to believe that the person to be arrested has committed a crime" (People v Moore, 6 NY3d 496, 498-499 [2006], citing De Bour, 40 NY2d at 223; see Burnett, 126 AD3d at 1492).

Here, as the People acknowledge, the anonymous 911 phone tip generated only a belief that criminal activity was afoot and, as such, limited the officers' permissible action to a level two common-law right of inquiry (see Moore, 6 NY3d at 498-499). The officers thus were "entitled to interfere with [defendant] to the extent necessary to gain explanatory information, but short of a forcible seizure" (De Bour, 40 NY2d at 223), permitting them to engage defendant in "extended and accusatory" questioning (People v Hollman, 79 NY2d 181, 191 [1992]) and to "ask[ ] defendant for permission to search his person" (People v Dibble, 43 AD3d 1363, 1364 [4th Dept 2007], lv denied 9 NY3d 1032 [2008]; see People v Battaglia, 86 NY2d 755, 756 [1995]).

"It is the People's burden to establish the voluntariness of defendant's consent [to such a search], and that burden is not easily carried, for a consent to search is not voluntary unless it is a true act of the will, an unequivocal product of an essentially free and unconstrained choice. Voluntariness is incompatible with official coercion, actual or implicit, overt or subtle" (People v Packer, 49 AD3d 184, 187 [1st Dept 2008], affd 10 NY3d 915 [2008] [internal quotation marks omitted]; see People v Gonzalez, 39 NY2d 122, 128 [1976]). Although "great deference should be given to the determination of the suppression court, which had the opportunity to observe the demeanor of the witnesses and to assess their credibility" (People v Layou, 134 AD3d 1510, 1511 [4th Dept 2015], lv denied 27 NY3d 1070 [2016], reconsideration denied 28 NY3d 932 [2016]), we conclude that the court's determination that defendant consented to the search is "unsupported by the record" in light of the BWC footage and discernible audio (People v Williams, 244 AD3d 1785, 1788 [4th Dept 2025]; see generally People v Savage, 137 AD3d 1637, 1639 [4th Dept 2016]).

Inasmuch as the People failed to present evidence at the suppression hearing establishing defendant's voluntary consent to the search of his person, all physical evidence seized as a result of that consent "should have been suppressed" (People v Kendrick, 147 AD3d 1419, 1421 [4th Dept 2017] [internal quotation marks omitted]; see People v Purdy, 106 AD3d 1521, 1523 [4th Dept 2013]). We therefore reverse the judgment, vacate the plea, and grant that part of the omnibus motion seeking to suppress physical evidence. Additionally, because our conclusion results in the suppression of all evidence in support of the crimes charged, the indictment must be dismissed (see People v Ruise, 242 AD3d 1587, 1588 [4th Dept 2025]), and we remit the matter to Supreme Court for proceedings pursuant to CPL 470.45 (see People v Corey, 209 AD3d 1306, 1306-1307 [4th Dept 2022]; People v Holz, 184 AD3d 1156, 1157 [4th Dept 2020]).

In light of our determination, we do not address defendant's challenge to the severity of the sentence.

Entered: April 24, 2026

Ann Dillon Flynn

Clerk of the Court