People v Allen (2020 NY Slip Op 06594)





People v Allen


2020 NY Slip Op 06594


Decided on November 13, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 13, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., NEMOYER, CURRAN, AND WINSLOW, JJ.


572 KA 20-00161

[*1]THE PEOPLE OF THE STATE OF NEW YORK, APPELLANT,
v
DARNELL ALLEN, DEFENDANT-RESPONDENT. 






JOHN J. FLYNN, DISTRICT ATTORNEY, BUFFALO (DAVID A. HERATY OF COUNSEL), FOR APPELLANT. 


 Appeal from an order of the Erie County Court (Suzanne Maxwell Barnes, J.), dated September 18, 2019. The order granted that part of defendant's omnibus motion seeking to suppress physical evidence and statements. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law, that part of defendant's omnibus motion seeking to suppress physical evidence and statements is denied, and the matter is remitted to Erie County Court for further proceedings on the indictment.
Memorandum: On appeal from an order granting that part of defendant's omnibus motion seeking to suppress physical evidence—i.e., a handgun—and his subsequent oral statements to the police, the People contend that County Court erred in suppressing the handgun and statements on the ground that they resulted from unlawful police pursuit. We agree.
The evidence at the suppression hearing established that a police officer responding to the sound of gunshots observed a person walking towards him a few blocks away from the location of the incident. The officer lost sight of the person before he was able to speak with him to determine whether the person had heard the gunshots, but he relayed over the police radio a generic physical description of the person he had encountered and that person's location. Shortly thereafter, a second police officer encountered defendant not far from the radioed position. The second officer engaged defendant in a brief conversation from her patrol vehicle, after which defendant entered a nearby cut-through—i.e., a pedestrian pathway that connected two streets. When defendant first entered the cut-through, the second officer did not consider him a suspect in the shooting and he was not engaged in any unlawful activity. Nonetheless, the second officer, still in her patrol vehicle and now accompanied by another officer in a separate patrol vehicle, followed defendant along the pathway, maintaining a distance of about five feet from defendant. The cut-through was so narrow at one point that the officers would not have been able to open the doors of their patrol vehicles. When defendant reached the end of the cut-through, he removed a handgun from his pocket and ran. As he ran, defendant discarded the handgun and was thereafter arrested.
"In evaluating police conduct, a court must determine whether the action taken was justified in its inception and at every subsequent stage of the encounter" (People v Savage, 137 AD3d 1637, 1638 [4th Dept 2016] [internal quotation marks omitted]; see People v Nicodemus, 247 AD2d 833, 835 [4th Dept 1998], lv denied 92 NY2d 858 [1998]; see generally People v De Bour, 40 NY2d 210, 222-223 [1976]). "In determining whether an officer had the requisite basis to support the level of intrusion that occurred, the suppression court must consider the totality of circumstances" (People v Wallace, 181 AD3d 1214, 1215 [4th Dept 2020]).
At the first level of a police-civilian encounter, i.e., a request for information, a police officer may approach an individual "when there is some objective credible reason for that interference not necessarily indicative of criminality" (De Bour, 40 NY2d at 223) and may [*2]engage in unobtrusive observation that does not limit the individual's freedom of movement (see People v Howard, 50 NY2d 583, 592 [1980]). In contrast, a seizure or detention of a person takes place where "police action results in a significant interruption [of the] individual's liberty of movement" (People v Bora, 83 NY2d 531, 534 [1994] [internal quotation marks omitted]; see People v Feliciano, 140 AD3d 1776, 1777 [4th Dept 2016], lv denied 28 NY3d 1027 [2016]). A detention or a pursuit of a person for the purpose of detention amounts to a level three encounter and must be supported by reasonable suspicion that a crime has been, is being, or is about to be committed (see People v Moore, 6 NY3d 496, 498-499 [2006]; People v Martinez, 80 NY2d 444, 447 [1992]; People v Leung, 68 NY2d 734, 736 [1986]). An officer may use his or her vehicle to unobtrusively follow and observe an individual without elevating the encounter to a level three pursuit (see People v Baldwin, 156 AD3d 1356, 1357 [4th Dept 2017], lv denied 31 NY3d 981 [2018]; People v Owens, 147 AD3d 1312, 1313 [4th Dept 2017], lv denied 29 NY3d 1035 [2017]).
Here, we agree with the People that, based on the testimony adduced at the suppression hearing, the police were, at all relevant times, engaged merely in unobtrusive observation of defendant and did not engage in pursuit by following him down the pedestrian path in their patrol vehicles (see People v Brown, 142 AD3d 1373, 1374-1375 [4th Dept 2016], lv denied 28 NY3d 1123 [2016]; Feliciano, 140 AD3d at 1777; see generally Howard, 50 NY2d at 592). The police did not activate their vehicles' overhead lights or sirens, exit their vehicles, or significantly limit defendant's freedom of movement along the pedestrian path (see Baldwin, 156 AD3d at 1357; Brown, 142 AD3d at 1375). Indeed, defendant remained free to keep walking down the path, even if at one point on the path he could not have turned around and traveled in the opposite direction. Thus, we conclude that the handgun was properly seized by the police because defendant did not discard the handgun in response to unlawful police conduct (see Baldwin, 156 AD3d at 1357-1358). Inasmuch as the police conduct was lawful, defendant's statements to the police are not subject to suppression as fruit of the poisonous tree (see Feliciano, 140 AD3d at 1777).
Entered: November 13, 2020
Mark W. Bennett
Clerk of the Court