People v Moore (2021 NY Slip Op 00927)





People v Moore


2021 NY Slip Op 00927


Decided on February 11, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 11, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., LINDLEY, NEMOYER, CURRAN, AND DEJOSEPH, JJ.


54 KA 20-00592

[*1]THE PEOPLE OF THE STATE OF NEW YORK, APPELLANT,
v
NISSAR MOORE, DEFENDANT-RESPONDENT. 






WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (KENNETH H. TYLER, JR., OF COUNSEL), FOR APPELLANT. 
FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (THOMAS MANNING LEITH OF COUNSEL), FOR DEFENDANT-RESPONDENT. 


 Appeal from an order of the Onondaga County Court (Matthew J. Doran, J.), dated October 23, 2019. The order granted that part of defendant's omnibus motion seeking to suppress physical evidence. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law, that part of defendant's omnibus motion seeking to suppress physical evidence is denied, and the matter is remitted to Onondaga County Court for further proceedings on the indictment.
Memorandum: On appeal from an order granting that part of defendant's omnibus motion seeking to suppress physical evidence, i.e., a loaded handgun, the People contend that County Court erred in suppressing the handgun on the ground that it was seized following an unlawful police pursuit. We agree.
The evidence at the suppression hearing established that an unidentified person called 911 and said that there was a group of five to seven black males at a particular location and that two of the men "had guns out." According to the caller, one of the men with a gun was wearing a tan and black coat while the other was wearing a black coat. One officer responded to the location identified by the caller and observed two groups of men walking in different directions. The officer exited her patrol car, approached a man wearing a tan and brown coat, and asked if he would consent to a pat frisk. The man obliged, and the officer found no weapons.
In the meantime, a man wearing a black coat continued walking, and his movements were captured on a street pole police camera that was being monitored by a different officer. The man in the black coat was defendant, who was on probation at the time. The monitoring officer reported defendant's whereabouts over the police radio, stating that he matched the description provided by the anonymous caller. A third officer was in the vicinity in an unmarked vehicle, heard the report, activated the rear emergency lights on his vehicle, and responded to the scene.
As the third officer approached the scene, he observed defendant in a black coat walking westbound on the sidewalk. Upon seeing the third officer in his vehicle, defendant ran down a driveway. The third officer pulled into the driveway of that residence and, while still in the vehicle, observed defendant toss what appeared to be a long-barreled handgun over the fence while he ran. It was at that point that the third officer exited his vehicle and chased defendant, ultimately apprehending him. A loaded .22-caliber firearm was found on the ground in the backyard adjacent to the driveway.
"A detention or a pursuit of a person for the purpose of detention amounts to a level three encounter and must be supported by reasonable suspicion that a crime has been, is being, or is about to be committed" (People v Allen, 188 AD3d 1595, 1596 [4th Dept 2020]). Nevertheless, "[a]n officer may use his or her vehicle to unobtrusively follow and observe an individual [*2]without elevating the encounter to a level three pursuit" (id.). A police-civilian encounter will escalate to a level three encounter, i.e., a forcible stop or seizure, "whenever an individual's freedom of movement is significantly impeded . . . Illustrative is police action which restricts an individual's freedom of movement by pursuing one who, for whatever reason, is fleeing to avoid police contact" (People v Martinez, 80 NY2d 444, 447 [1992]; see People v Bora, 83 NY2d 531, 535-536 [1994]).
Here, the third officer had activated his emergency lights en route to the scene and before he encountered defendant. Upon observing defendant walking on the sidewalk, the third officer stopped his vehicle in a driveway. At no point did the third officer engage in any particularized act toward defendant or restrict his freedom of movement (see Allen, 188 AD3d at 1597; People v Jimenez, 224 AD2d 1002, 1002 [4th Dept 1996]; see also People v Shankle, 37 AD3d 742, 742-743 [2d Dept 2007], lv denied 9 NY3d 851 [2007]).
In our view, the third officer was entitled to "continue [his] observation [of defendant] provided that [he did] so unobtrusively and [did] not limit defendant's freedom of movement by so doing" (People v Howard, 50 NY2d 583, 592 [1980], cert denied 449 US 1023 [1980]; see Allen, 188 AD3d at 1597; see generally Bora, 83 NY2d at 535). Nothing the third officer did before defendant abandoned the handgun would have communicated to defendant an intent to intrude upon defendant's freedom of movement (see Allen, 188 AD3d at 1597; cf. People v Collins, 185 AD3d 447, 447-448 [2d Dept 2020]).
We thus conclude that the handgun was properly seized by the police because defendant did not discard the handgun in response to unlawful police conduct (see Allen, 188 AD3d at 1597). The reliance of defendant and the court on People v Jones (174 AD3d 1532, 1533 [4th Dept 2019]) is misplaced inasmuch as the police officer in that case, unlike the third officer here, did not see the fleeing defendant abandon a gun before giving chase.
Entered: February 11, 2021
Mark W. Bennett
Clerk of the Court