Appeals by the defendant from two judgments of the Supreme Court, Queens County (Griffin, J.), both rendered June 1, 2012, convicting him of criminal possession of a weapon in the second degree under indictment No. 2426/11, and criminal possession of a controlled substance in the third degree under indictment No. 10248/11, upon his pleas of guilty, and imposing sentences. The appeal from the judgment rendered under indictment No. 10248/11 brings up for review the denial, after a hearing, of that branch of the defendant’s omnibus motion which was to suppress physical evidence.
*876 Ordered that the judgments are reversed, on the law, that branch of the defendant’s omnibus motion which was to suppress physical evidence under indictment No. 10248/11 is granted, indictment No. 10248/11 is dismissed, and the matter is remitted to the Supreme Court, Queens County, for further proceedings consistent with CPL 160.50 and to afford the defendant an opportunity to withdraw his plea of guilty under indictment No. 2426/11.
On January 22, 2011, in a Queens County neighborhood in which numerous narcotics sales had taken place, a detective assigned to a narcotics unit was driving an unmarked police van when he saw a car containing two men pull over to the curb. The detective saw a third man approach the passenger side of the car, lean in, and apparently exchange something with the defendant, who was in the driver’s seat. The detective did not see what was being exchanged and did not see any money passed between the men. Moreover, there is no evidence that the men were acting in a manner that could be described as furtive. Nonetheless, based on his training and his knowledge of how drug deliveries were made in the neighborhood, the detective suspected that he was witnessing a drug transaction. After positioning the van to block the defendant’s car from proceeding, the detective and his partner got out of the van and approached the defendant’s car. The third man, who was still standing by the side of the car, looked at the detective, appeared startled, and dropped something through the open passenger-side window. The detective ordered the three men not to move and, from outside the car, saw a “twist” of what he believed from his training and experience to be crack cocaine on the passenger seat of the car. The detective and his partner arrested the men and recovered the crack cocaine they had seen, as well as additional crack cocaine they found in the car. The defendant was charged, under indictment No. 10248/11 (hereinafter the drug indictment) with numerous drug felonies. A few months later, the defendant was arrested and charged under indictment No. 2426/11 (hereinafter the weapon possession indictment) with numerous unrelated weapon possession felonies.
In January 2012, the Supreme Court conducted a suppression hearing in connection with the drug indictment. At the conclusion of the hearing, the court denied that branch of the defendant’s omnibus motion which was to suppress the crack cocaine found in the defendant’s car.
Several months later, the Supreme Court told the defendant that, in exchange for a “top-count” plea of guilty on each indictment, it would sentence him to the minimum term on each *877 indictment and would order that the sentences be served concurrently. The defendant insisted that he wanted to retain the right to appeal the court’s suppression ruling. The court responded that it, and the People, wanted the case to be over, and that the defendant could go to trial if he wished. Then, the court told the defendant that certain “technicalities” survived appeal waivers, and the defendant immediately told the court that, in reliance on the court’s statement about the survival of some “technicalities,” he would accept the court’s offer. The defendant then pleaded guilty on both indictments and purported to waive his right to appeal. He was never directly told that his appeal waiver would bar appellate review of his suppression claim.
On the appeal under indictment No. 10248/11, the defendant challenges the appeal waiver and the denial of that branch of his omnibus motion which was to suppress the crack cocaine found in his car.
To be enforceable, an appeal waiver must be voluntary, knowing, and intelligent (see People v Callahan, 80 NY2d 273, 280 [1992]; People v Seaberg, 74 NY2d 1, 11 [1989]). “An appellate waiver meets this standard when a defendant has ‘a full appreciation of the consequences’ of such waiver” (People v Bradshaw, 18 NY3d 257, 264 [2011], quoting People v Seaberg, 74 NY2d at 11). The plea court must determine, in the first instance, whether an appeal waiver is voluntary, knowing, and intelligent “by considering all the relevant facts and circumstances surrounding the waiver, including the nature and terms of the agreement and the age, experience and background of the accused” (People v Seaberg, 74 NY2d at 11; see People v Bradshaw, 18 NY3d at 264-265). Additionally, “ ‘though a . . . court need not engage in any particular litany’ or catechism in satisfying itself that a defendant has entered a knowing, intelligent and voluntary appeal waiver, a . . . court ‘must make certain that a defendant’s understanding’ of the waiver ... is evident on the face of the record” (People v Bradshaw, 18 NY3d at 265, quoting People v Lopez, 6 NY3d 248, 256 [2006]). A written waiver may cure an ambiguity in an oral colloquy (see People v Ramos, 7 NY3d 737, 738 [2006]), but only if the oral colloquy on the record reflects the defendant’s understanding of its contents (see People v Bradshaw, 18 NY3d at 265, 267; People v Nugent, 109 AD3d 625, 625 [2013]; People v Parris, 106 AD3d 555, 556 [2013]; cf. People v Simmons, 113 AD3d 420 [2014]; People v Morey, 110 AD3d 1378 [2013]).
Here, the Supreme Court discussed the appeal waiver extensively, but never made clear that it would bar appellate *878 review of the defendant’s suppression claim. Under the circumstances of this case, the waiver is not enforceable. The defendant was adamant that he wanted to retain his right to appeal the suppression ruling, and he was willing, at least at first, to forego the plea agreement to ensure that he could raise that issue on appeal. Thus, for the appeal waiver to foreclose appellate review of the defendant’s suppression claim, it was necessary that the record reflect the defendant’s awareness that his appeal waiver would foreclose appellate review of the claim. Nothing on the record reflects that awareness. Moreover, inasmuch as there was no on-the-record reference to the written appeal waiver, that waiver cannot cure the deficiency in the oral colloquy (see People v Bradshaw, 18 NY3d at 265, 267; see also People v DeSimone, 80 NY2d 273, 283 [1992]). Accordingly, the defendant’s otherwise valid waiver of his right to appeal does not foreclose appellate review of his suppression claim.
The People nonetheless contend that the defendant failed to preserve for appellate review his claim that the police officers lacked reasonable suspicion to stop him when they blocked his car. This contention is without merit. In response to the defendant’s contention that the police officers lacked probable cause to stop him, the hearing court expressly decided the issue of reasonable suspicion. Therefore, the defendant’s claim is preserved for appellate review as a question of law (see CPL 470.05 [2]; People v Edwards, 95 NY2d 486, 491 n 2 [2000]; People v Palmer, 84 AD3d 1414, 1414 [2011]; People v Fermin, 36 AD3d 934, 935 [2007]; People v Madison, 22 AD3d 684, 686 [2005]; People v Parson, 282 AD2d 477, 478 [2001]; cf. People v Bonilla, 81 AD3d 555, 556 [2011]).
A forcible stop and detention is permissible “[w]here a police officer entertains a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor” (People v De Bour, 40 NY2d 210, 223 [1976]; see People v Benjamin, 51 NY2d 267, 270 [1980]; People v Davenport, 92 AD3d 689, 690 [2012]; People v Morales, 58 AD3d 873, 874 [2009]). Reasonable suspicion has been defined as “that quantum of knowledge sufficient to induce an ordinarily prudent and cautious person under the circumstances to believe criminal activity is at hand” (People v Martinez, 80 NY2d 444, 448 [1992] [internal quotation marks, brackets and citation omitted]). Whether a police intrusion has amounted to a forcible stop and detention turns on whether there has been “a significant interruption with an individual’s liberty of movement” (People v De Bour, 40 NY2d at 216; see People v Bora, 83 NY2d 531, 534 [1994]).
*879 Here, by blocking the defendant’s car to prevent it from moving, the police officers “stopped” it (People v Jennings, 45 NY2d 998, 999 [1978]; see People v Hurdle, 106 AD3d 1100, 1104 [2013]; People v Lopez, 75 AD3d 610, 612 [2010]). Accordingly, reasonable suspicion was required (see People v Hurdle, 106 AD3d at 1104; People v Lopez, 75 AD3d at 612; People v Creary, 61 AD3d 887, 889 [2009]). Resolution of the issue of whether the police officers possessed reasonable suspicion requires evaluation of the totality of the circumstances (see People v Williams, 69 AD3d 663, 664 [2010]; People v Hoover, 236 AD2d 626, 628 [1997]; People v Graham, 211 AD2d 55, 58-59 [1995]). Upon our evaluation of the totality of the circumstances in this case, we conclude that, at the time the police officers blocked the defendant’s car, they lacked reasonable suspicion to believe that the defendant had committed, was committing, or was about to commit a crime. Although the detective who stopped the defendant’s car was trained in identifying narcotics transactions and was aware of numerous drug transactions in the neighborhood, including some involving car deliveries of drugs, he did not see what the defendant and the pedestrian exchanged, could not see if one of the men gave the other something in return for something else, and did not see money pass between the two men (cf. People v Wynn, 25 AD3d 576, 577 [2006]; People v Oeller, 191 AD2d 355 [1993], affd 82 NY2d 774 [1993]). Moreover, the detective saw only one exchange (cf. People v Coleman, 183 AD2d 840, 840-841 [1992]), did not describe any furtive conduct on the part of the two men (cf. People v Garcia, 96 AD3d 481, 482 [2012]; People v Bonilla, 81 AD3d 555, 556 [2011]), or, indeed, any other conduct that would give rise to a reasonable suspicion that he was observing a drug transaction (cf. People v Smalls, 111 AD3d 582 [2013]; People v DiMatteo, 62 AD3d 418 [2009]). The detective’s observations supported only a “founded suspicion that criminal activity [was] afoot” (People v De Bour, 40 NY2d at 223; see People v Soscia, 96 AD3d 1081, 1081 [2012]; People v Martin, 88 AD3d 473, 474 [2011], affd 19 NY3d 914 [2012]; People v Chin, 25 AD3d 461, 462 [2006]), which is insufficient to justify the stop of the defendant’s car (see People v Jennings, 45 NY2d at 999; People v Hurdle, 106 AD3d at 1104). Consequently, that branch of the defendant’s omnibus motion which was to suppress the crack cocaine must be granted. Without that evidence, there could not be sufficient evidence to prove his guilt, and the drug indictment must therefore be dismissed.
The defendant raises no independent claim on the appeals with respect to his conviction relating to the weapon possession indictment, but the judgment on that indictment must be re *880 versed inasmuch as his plea of guilty in that case was premised on the promise of a sentence that would run concurrently with the sentence imposed on the drug indictment (see People v Williams, 17 NY3d 834, 836 [2011]; People v Fuggazzatto, 62 NY2d 862, 863 [1984]). The defendant is entitled to an opportunity to withdraw his plea of guilty in that case, and we remit the matter to the Supreme Court, Queens County, for that purpose.
Rivera, J.E, Balkin, Hinds-Radix and Maltese, JJ., concur.