People v Lawson (2018 NY Slip Op 05493)





People v Lawson


2018 NY Slip Op 05493


Decided on July 25, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 25, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
JEFFREY A. COHEN
FRANCESCA E. CONNOLLY
VALERIE BRATHWAITE NELSON, JJ.


2016-07763
 (Ind. No. 1879/13)

[*1]The People of the State of New York, respondent,
v
Davan Lawson, appellant.


Randall D. Unger, Bayside, NY, for appellant.
Richard A. Brown, District Attorney, Kew Gardens, NY (John M. Castellano, Johnnette Traill, Merri Turk Lasky, and John F. McGoldrick of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Leslie Leach, J.), rendered July 14, 2016, convicting him of criminal possession of a weapon in the second degree (two counts), criminal possession of a weapon in the third degree (three counts), and unauthorized use of a vehicle in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress certain physical evidence.
ORDERED that the judgment is affirmed.
On August 22, 2012, at approximately 8:50 p.m., a police officer observed a red Camaro traveling recklessly through an intersection in Queens. Approximately 30 to 40 seconds later, the police officer received a police radio transmission concerning a shooting that had occurred in the direction from which the Camaro was traveling. At approximately 9:20 p.m., the police stopped the defendant, who was driving a red Camaro without its headlights on, 20 to 25 blocks away from the scene of the shooting. The officer who effectuated the stop drew his gun, and ordered the defendant, who had already exited the car, not to move. The defendant was then handcuffed and frisked. The officer observed several bullet cartridges in plain view inside the red Camaro. Within minutes, a civilian informed police officers who had gathered in response to the stop that, just prior to the stop, he observed the Camaro on his block and the driver of the Camaro walking down the street, approximately 1½ blocks away. The police canvassed the block indicated by the civilian, and recovered from various areas on the block, in close proximity to each other, among other things, a loaded rifle and two handguns stacked on top of each other, several types of ammunition, and a rewards card issued in the defendant's name which was located outside of a brown wallet. After the defendant was transported to the police station, he was searched incident to his arrest and a bullet was recovered from one of his pants pockets.
Prior to trial, the defendant moved, inter alia, to suppress physical evidence. Following a hearing, the Supreme Court, among other things, denied that branch of the defendant's omnibus motion which was to suppress certain physical evidence.
At trial, there was testimony that at approximately 9:15 p.m. on August 22, 2012, a witness observed a black male in his backyard. A police officer testified that, from that witness's backyard, he looked over the fence and observed a rifle and two handguns in the neighboring [*2]backyard. The People presented testimony that all of the firearms and the ammunition tested were operable. DNA evidence revealed that the defendant's brother was a major contributor to DNA found on the handguns and that the defendant was more than twice as likely than not to be a contributor to DNA found on the rifle. After trial, the defendant was convicted of several counts charged in the indictment.
The defendant appeals from the judgment of conviction, which brings up for review the denial of that branch of his omnibus motion which was to suppress the bullet the police recovered from his pocket and the ammunition recovered from the red Camaro.
In evaluating police conduct, the court must determine whether the actions taken were justified at every stage of the encounter (see People v De Bour, 40 NY2d 210, 223; People v Finlayson, 76 AD2d 670, 678). A forcible stop and seizure by the police requires reasonable suspicion of criminal activity (see People v Spencer, 84 NY2d 749, 753; People v Sobotker, 43 NY2d 559, 563). "Reasonable suspicion" has been defined as "the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe that criminal activity is at hand" (People v Sobotker, 43 NY2d at 564). "To achieve a level of reasonability, the police officer's suspicion must be based upon specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion'" (People v Riggio, 202 AD2d 609, 610, quoting Terry v Ohio, 392 US 1, 21; see People v Hicks, 68 NY2d 234, 238). "Resolution of the issue of whether [a police officer] possessed reasonable suspicion requires evaluation of the totality of the circumstances" (People v Loper, 115 AD3d 875, 879).
Contrary to the People's contention, the defendant's suppression claim is preserved for appellate review (see CPL 470.05[2]; People v Miles, 58 AD3d 872). Nevertheless, the suppression record demonstrates that the stop and subsequent police actions were based on reasonable suspicion, as evaluated on a totality of the circumstances (see People v Chestnut, 51 NY2d 14, 21; People v Bowers, 148 AD3d 1042, 1043; People v Loper, 115 AD3d at 879; People v Finlayson, 76 AD2d at 679), which escalated to probable cause for an arrest (see People v Finlayson, 76 AD2d at 681). The defendant was driving the red Camaro without its headlights on when he was stopped within close temporal and geographic proximity to the scene of a shooting. The car substantially matched the description of a Camaro that had been seen driving recklessly seconds prior to a police radio transmission regarding a shooting in the area and, again, minutes later, speeding past the same area (see People v Jogie, 51 AD3d 1038, 1039; People v Heyward, 303 AD2d 522, 523; People v Devorce, 293 AD2d 550). Once stopped, the defendant exited the Camaro on his own. A police officer "may take appropriate self-protective measures when he lawfully confronts an individual and reasonably believes him to be armed or otherwise dangerous" (People v Finlayson, 76 AD2d at 678). Moreover, the cartridges recovered from the Camaro, which were in plain view (see People v Hernandez, 125 AD2d 492, 493; People v Greene, 104 AD2d 601, 606-607), provided additional indicia of criminality (cf. People v Riddick, 110 AD2d 787), and the bullet recovered from the defendant's pants pocket was found incident to his lawful arrest (see People v Jones, 13 AD3d 393, 393). Therefore, that branch of the defendant's omnibus motion which was to suppress those items was properly denied.
The defendant's contention that the evidence was legally insufficient to support his convictions is not preserved for appellate review (see People v Finger, 95 NY2d 894, 895; People v Stewart, 11 AD3d 568, 568; People v Cannon, 300 AD2d 407, 408). In any event, viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410; People v Jenkins, 81 AD3d 662, 662). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of evidence (see People v Romero, 7 NY3d 633, 643-644).
The defendant's contention that the prosecutor made improper remarks during summation, depriving him of his right to a fair trial, is not preserved for appellate review (see CPL 470.05[2]; People v Alvarado, 126 AD3d 803, 805; People v Charlton, 27 AD3d 658, 658). The defendant either did not object to the remarks at issue or made only general one-word objections, and [*3]to the extent the trial court sustained his objections, the defendant neither objected to the court's curative instructions nor requested additional instructions (see People v Comer, 73 NY2d 955, 957; People v Tardbania, 72 NY2d 852, 853; People v Charlton, 27 AD3d at 658). Moreover, the defendant's post-summations motion for a mistrial was untimely and failed to preserve his contentions (see CPL 470.05; People v Alvarado, 126 AD3d at 804; People v Morris, 148 AD2d 552, 552). In any event, the defendant's contentions are without merit as the challenged remarks were, for the most part, either fair response to defense counsel's arguments, fair comment on the evidence, or related to matters which were fairly inferable from the evidence (see People v Charlton, 27 AD3d at 658-659). To the extent any remarks were improper, the errors were mitigated by the court's curative instructions, which the jury is presumed to have followed (see People v Baker, 14 NY3d 266, 273-274; People v Elder, 152 AD3d 787, 789; People v Williams, 123 AD3d 1152, 1154, affd 29 NY3d 84). Accordingly, there was no cumulative effect of the errors that deprived the defendant of a fair trial and, therefore, reversal is not warranted (see People v White, 196 AD2d 641, 641).
MASTRO, J.P., COHEN, CONNOLLY and BRATHWAITE NELSON, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court