People v Brown (2021 NY Slip Op 05579)





People v Brown


2021 NY Slip Op 05579


Decided on October 13, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 13, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
CHERYL E. CHAMBERS
SYLVIA O. HINDS-RADIX
VALERIE BRATHWAITE NELSON
LINDA CHRISTOPHER, JJ.


2017-09678
 (Ind. No. 9446/15)

[*1]The People of the State of New York, respondent,
v
Willie Brown, appellant.


Patricia Pazner, New York, NY (Paul Skip Laisure of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove, Sholom J. Twersky, and Andrew S. Ayala of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (Matthew D'Emic, J.), rendered July 6, 2017, convicting him of criminal possession of a firearm, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing (Guy J. Mangano, Jr., J.), of those branches of the defendant's omnibus motion which were to suppress physical evidence and certain statements he made to law enforcement officials.
ORDERED that the judgment is reversed, on the law, the defendant's plea of guilty is vacated, those branches of the defendant's omnibus motion which were to suppress physical evidence and certain statements he made to law enforcement officials are granted, and the matter is remitted to the Supreme Court, Kings County, for further proceedings on the indictment.
On November 18, 2015, at approximately 2:00 a.m., plainclothes police officers of the New York City Police Department, on patrol in Brooklyn in an unmarked vehicle, saw the defendant standing outside of a corner store smoking a cigarette. At the suppression hearing, one of the officers testified that as his vehicle was approaching a red traffic signal at the intersection, the defendant "tensed up" or "stiffened up" and, after making eye contact with the officer through the front windshield, the defendant's "eyes widened" and the defendant walked into the corner store. The officer continued to observe the defendant through the store's window, but did not have a full view of him. The officer saw the defendant do "a little pacing back and forth" and then come back outside. When the traffic signal turned green, the officer and his partner pulled over and exited their vehicle. The officer, who intended to find out why the defendant had gone into the store, gave the following account of what transpired next: "I got out the car, I walked around the car, and then I noticed—As I walked around the car, I noticed a plastic bag on the freezer in the deli, right at the doorway. So, when I walked around the car, I asked [the defendant], 'Is that your bag?' He goes, 'Yes.' I said, 'What's in it?' He goes, 'Boots.' And then I walked over to the bag."
According to the officer, there were other people inside the store, including people who worked there as well as customers. Without touching the bag, and without asking anyone inside the store whether the bag belonged to them, the officer "looked straight down" into the bag and saw the butt of a pistol sticking out of a pair of boots inside the bag.
On cross-examination, the officer added that when he and his partner exited their vehicle, the defendant "kind of approached" them, "came out talking," and "lifted his jacket." [*2]However, the officer could not recall what, if anything, the defendant said at that point because the defendant was speaking with the officer's partner. The officer observed that the defendant was unarmed.
After the gun was recovered, the defendant was placed under arrest and subsequently indicted on charges of criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, and criminal possession of a firearm. Upon the defendant's plea of guilty to criminal possession of a firearm, the Supreme Court imposed sentence. The defendant appeals.
On a motion to suppress, the People bear the burden of going forward to establish the legality of police conduct in the first instance (see People v Harris, 192 AD3d 151, 157-158). Once the People have met their initial burden, the defendant bears the ultimate burden of proving the illegality of the search and seizure (see People v Berrios, 28 NY2d 361, 367).
Where police acting in their law enforcement capacity initiate an encounter with private citizens, the propriety of the encounter must be assessed under the four-tiered analytical framework articulated in People v De Bour (40 NY2d 210) (see People v McIntosh, 96 NY2d 521, 525). Although police officers have fairly broad authority to approach an individual and pose basic, nonthreatening questions regarding, for instance, identity, address, or destination, they may not do so on mere whim or caprice—the request must be based on an articulable reason not necessarily related to criminality (see id. at 525).
Here, the officer who testified at the suppression hearing failed to articulate any reason for approaching the defendant, other than that he appeared nervous and the officer wanted to "see why he went into the store." This, standing alone, did not provide an objective, credible reason for the officers to approach the defendant and request information (see id.; People v Holz, 184 AD3d 1156, 1157; People v Larmond, 106 AD3d 934; People v Miles, 82 AD3d 1010, 1010-1011).
In any event, even assuming, arguendo, that the arresting officers had an objective, credible reason for approaching the defendant, they had no basis for immediately engaging the defendant in a pointed inquiry regarding the ownership and contents of the bag inside the store (see People v Hollman, 79 NY2d 181, 193-194; People v Wright, 195 AD3d 1371; People v Wallace, 181 AD3d 1214, 1215-1216; see also People v Ocasio, 119 AD2d 21). In this regard, we find it relevant that the People adduced no evidence that the defendant was ever observed in possession of the bag, and the officer who testified at the hearing never asked anyone else in the store if the bag belonged to them. In fact, when pressed on cross-examination as to why the officer singled out the defendant for this particular inquiry, he answered, "Because from the movements that I told you earlier he made, when he tensed up, his eyes widened when he seen us when I looked at him." Moreover, during the suppression hearing, the officer did not testify that he drew any negative inference—as our dissenting colleague does—from the fact that the defendant lifted up his jacket. To the contrary, that motion allowed the officer to observe that the defendant was unarmed. Thus, the defendant's actions were too vague and too generic to support a level two inquiry.
Accordingly, the physical evidence seized and the statements made by the defendant should have been suppressed. In light of our determination, we need not address the parties' remaining contentions.
CHAMBERS, HINDS-RADIX and BRATHWAITE NELSON, JJ., concur.
MASTRO, J.P., dissents, and votes to affirm the judgment, with the following memorandum, in which CHRISTOPHER, J., concurs:
Because my reading of precedents of the Court of Appeals and of our own Court leads me to conclude that the police conduct in this case was lawful under all of the attendant circumstances, I respectfully dissent and vote to affirm the judgment of conviction.
At a pretrial suppression hearing, the People presented uncontroverted testimony, the credibility of which the defendant does not challenge, establishing that on November 18, 2015, at approximately 2:00 a.m., plainclothes Police Officer Brian Feeley, a 10-year veteran of the New [*3]York City Police Department, and his partner were on patrol in an unmarked vehicle as part of Brooklyn's 77th Precinct Anti-Crime Unit, which focused on "high-crime areas within the precinct relating to like shootings, robberies." The officers' vehicle rolled toward a red light at an intersection where a bodega was located. The officers were familiar with the store because they regularly passed it while on anti-crime patrol. There were few pedestrians and vehicles in the area due to the lateness of the hour. The weather was clear, and the area around the bodega was illuminated by street lights and the store's own lights. As they proceeded, Officer Feeley observed the defendant standing outside the bodega smoking a cigarette. When he made eye contact with the officer, the defendant "tensed up" and "stiffened up" with "a little jolt." The defendant's eyes then widened and he turned and walked into the store. While the vehicle slowly passed, Officer Feeley continued to observe the defendant as he paced back and forth among the racks of merchandise inside the store. As the defendant emerged from the store, the officers decided to pull their vehicle to the curb to ask him why he had walked into the bodega upon seeing them. However, before the officers could leave the vehicle or speak, the defendant approached, began talking to them, and lifted his jacket to show them that he was unarmed. Officer Feeley then exited the vehicle, and as he walked around the vehicle, he saw an unattended black plastic bag sitting on a freezer just inside the doorway of the bodega, in the vicinity of where he had just observed the defendant pacing back and forth. As he walked by the defendant, Officer Feeley asked him, "Is that your bag?" and the defendant responded, "Yes." Officer Feeley further asked, "What's in it?" and the defendant answered, "Boots."
Officer Feeley then entered the bodega, in which he observed that other people were present, and peered down into the open plastic bag on the freezer, seeing two boots inside and observing, in plain view, the butt of a handgun sticking out of one of the boots. Officer Feeley again asked the defendant if the bag belonged to him, and the defendant confirmed that it did. Officer Feeley then placed the defendant under arrest. The defendant and the loaded, semiautomatic handgun were transported to the precinct station house. After acknowledging and waiving his Miranda rights (see Miranda v Arizona, 384 US 436), the defendant gave a written statement to the police.
At the conclusion of the hearing, the Supreme Court credited the testimony of Officer Feeley in its entirety and denied those branches of the defendant's omnibus motion which were to suppress physical evidence and his statements. The defendant subsequently entered a plea of guilty to criminal possession of a firearm.
Contrary to the defendant's contention, the hearing court properly denied suppression, as the observations made by Officer Feeley while on anti-crime patrol in the early morning hours, including the defendant's startled reaction upon seeing the plainclothes officers, his entry into the bodega immediately thereafter, and his conspicuous conduct in pacing back and forth while inside the store, provided the police with an objective, credible reason, not necessarily indicative of criminality, to approach and request information from the defendant (see e.g. People v Reyes, 83 NY2d 945, 946; People v Hollman, 79 NY2d 181, 192-193; Matter of James R., 76 NY2d 825, 826; People v De Bour, 40 NY2d 210, 220; People v Davis, 78 AD3d 724; People v Flynn, 15 AD3d 177; People v Belliard, 309 AD2d 618; People v Jackson, 251 AD2d 349; People v Wells, 226 AD2d 406). Moreover, the defendant's additional conduct in approaching the officers' vehicle, speaking to them, and lifting his jacket before the officers could even address him, coupled with Officer Feeley's observation of an unattended bag sitting on the freezer in the area where he had just observed the defendant pacing back and forth, further justified the officer's inquiry regarding the ownership and contents of the bag (see People v Hill, 289 AD2d 505; People v Jackson, 251 AD2d 349), which the defendant elected to answer. Under the circumstances, there was no legal requirement that the officers witness actual physical possession of the bag by the defendant before they could ask him about it (see e.g. People v Hill, 289 AD2d 505), and the fact that other people were present inside the bodega is of no moment, as it appears from the hearing record that Officer Feeley did not become aware of their presence until after the defendant had already acknowledged ownership of the bag. Therefore, I discern no basis in the record upon which to disturb the hearing court's determination to deny suppression.
The defendant's remaining contentions are without merit or need not be reached in view of the foregoing. Accordingly, I would affirm.
ENTER:
Maria T. Fasulo
Acting Clerk of the Court