People v Joyette (2023 NY Slip Op 04216)

People v Joyette

2023 NY Slip Op 04216

Decided on August 9, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 9, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
JOSEPH J. MALTESE
PAUL WOOTEN
LARA J. GENOVESI
LILLIAN WAN, JJ.

2021-07714
 (Ind. No. 1360/20)

[*1]The People of the State of New York, appellant, 
v
Kyle Joyette, Kurt Stewart, and Rickardo Wallace, respondents.

Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, Adarna De Frietas, and Michael Tadros of counsel), for appellant.
John S. Campo, Garden City, NY, for respondent Kyle Joyette.
Kathleen Clifford Gallo, Manhasset, NY, for respondent Kurt Stewart.
Patricia Pazner, New York, NY (Hannah Kon of counsel), for respondent Rickardo Wallace.

DECISION & ORDER
Appeal by the People from an order of the Supreme Court, Queens County (Stephanie Zaro, J.), dated September 27, 2021, which, after a hearing, granted those branches of the defendants' separate omnibus motions which were to suppress physical evidence.
ORDERED that the order is affirmed.
According to testimony elicited at a suppression hearing, on December 19, 2020, at approximately 10:06 p.m., Police Officer Sean Cox and two other police officers were in an unmarked police vehicle in the vicinity of an address in Queens to look for the defendant Kurt Stewart. Officer Cox testified that an intelligence flyer indicated that Stewart might be at that location and carrying a firearm, that Stewart had "an active order of protection against him," and that there was an extradition warrant for Stewart issued in New Jersey. However, Officer Cox acknowledged that the intelligence flyer stated that the defendant was "currently not wanted." Further, Officer Cox did not testify that the extradition warrant was active, or indicate the source of the information that Stewart might be carrying a firearm.
Officer Cox testified that, as he drove past the location at issue, he observed an Audi [*2]in the driveway facing the street. Officer Cox acknowledged that, after driving around the block, he stopped the police vehicle "directly in front of the driveway" in a position "blocking the location" where the Audi was stopped with its engine running and its lights on. Officer Cox testified that he observed the occupants of the vehicle and recognized Stewart as the individual sitting in the front passenger seat. Officer Cox and his partners then got out of the police vehicle to approach the Audi, with the "purpose . . . to arrest Kurt Stewart . . . for the extradition warrant."
Officer Cox indicated that as he walked to within approximately five feet of the Audi, he started smelling marijuana. Officer Cox then instructed the driver of the Audi, the defendant Kyle Joyette, to lower the rear windows. Once the rear windows were lowered, Officer Cox observed the rear passenger, the defendant Rickardo Wallace, rolling a marijuana cigarette. After removing the occupants of the vehicle, Officer Cox conducted a search of the vehicle, and found marijuana cigarettes, loose marijuana, and a firearm beneath the passenger seat.
In an order dated September 27, 2021, issued after the suppression hearing, the hearing court granted those branches of the defendants' separate omnibus motions which were to suppress the physical evidence obtained from the Audi. The People appeal.
"On a motion to suppress physical evidence, the People bear the burden of going forward to establish the legality of police conduct in the first instance" (People v Hernandez, 40 AD3d 777, 778; see People v Berrios, 28 NY2d 361, 367-368). "The court must consider 'whether or not the action of the police was justified at its inception and whether or not it was reasonably related in scope to the circumstances which rendered its initiation permissible'" (People v Mortel, 197 AD3d 196, 203, quoting People v Cantor, 36 NY2d 106, 111). Where a police encounter was not "justified at its inception," a "[d]efendant's later conduct cannot validate [the] encounter" (People v Moore, 6 NY3d 496, 498; see People v Abdul-Mateen, 126 AD3d 986, 988).
In People v De Bour (40 NY2d 210), the Court of Appeals established a graduated four-level test for evaluating the propriety of police encounters. "[L]evel one permits a police officer to request information from an individual and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality; level two, the common-law right of inquiry, permits a somewhat greater intrusion and requires a founded suspicion that criminal activity is afoot; level three authorizes an officer to forcibly stop and detain an individual, and requires a reasonable suspicion that the particular individual was involved in a felony or misdemeanor; level four, arrest, requires probable cause to believe that the person to be arrested has committed a crime" (People v Moore, 6 NY3d at 498-499; see People v De Bour, 40 NY2d at 223). "Reasonable suspicion has been defined as 'that quantum of knowledge sufficient to induce an ordinarily prudent and cautious person under the circumstances to believe criminal activity is at hand'" (People v Loper, 115 AD3d 875, 878, quoting People v Martinez, 80 NY2d 444, 448). "Whether a police intrusion has amounted to a forcible stop and detention turns on whether there has been 'a significant interruption with an individual's liberty of movement'" (People v Loper, 115 AD3d at 878, quoting People v De Bour, 40 NY2d at 216).
Here, the People failed to establish the legality of the police conduct. Officer Cox's conduct in stopping the police vehicle "directly in front of the driveway" in a position "blocking the location" where the Audi was stopped with the engine running "constituted a stop, which required reasonable suspicion that the defendant or other occupants of the vehicle were either involved in criminal activity or posed some danger to the police" (People v Lopez, 75 AD3d 610, 612; see People v Dubuisson, 206 AD3d 757, 759; People v Williams, 177 AD3d 1312, 1312). Joyette, the [*3]driver of the Audi, could not have pulled out of the driveway due to the police vehicle blocking the driveway, and thus, the police conduct constituted a "'significant interruption with an individual's liberty of movement'" (People v Loper, 115 AD3d at 878, quoting People v De Bour, 40 NY2d at 216).
Further, the People failed to present any evidence showing that Officer Cox and his fellow officers observed any criminal activity at the time Officer Cox blocked the Audi from leaving the driveway. Indeed, Officer Cox did not smell marijuana until after Officer Cox parked in front of the driveway, got out of his vehicle to approach the Audi on foot, and had walked to within approximately five feet of the Audi. Thus, while the odor of marijuana emanating from the Audi—under the law in effect at the time—would justify a police search of the vehicle (see People v Potter, 208 AD3d 802), there was no opportunity for Officer Cox to smell the marijuana at the time he engaged in conduct constituting a stop of the vehicle. Since this case did not involve the officer witnessing any criminal activity prior to preventing the Audi from leaving the driveway, we disagree with our dissenting colleagues that this holding "would potentially lead to absurd results" by precluding an officer "who happens to witness the commission of a crime before initiating any contact with the defendant whatsoever . . . from making an arrest."
To the extent the People argue that Officer Cox stopped and then approached the Audi for any reason other than to arrest Stewart, the People's contention is not supported by the record (see People v Price, 186 AD3d 903, 904). At the hearing, Officer Cox unequivocally testified that his "purpose" in approaching the Audi after stopping the police vehicle in front of the driveway was "to arrest Kurt Stewart." Notably, the People do not dispute that they failed to establish the reliability of the information in the extradition warrant or the intelligence flyer which furnished the basis for Officer Cox to arrest Stewart, as the People did not present any evidence regarding the source of that information at the hearing (see People v Brown, 205 AD2d 791, 792).
Moreover, the People's contentions as to why Cox might have stopped the Audi are unavailing. Here, the People failed to establish a violation of Vehicle & Traffic Law § 1202. That provision provides, insofar as relevant, that no person shall stop, stand, or park a vehicle on a sidewalk, "[e]xcept when necessary to avoid conflict with other traffic, or when in compliance with law or the directions of a police officer" (Vehicle & Traffic Law § 1202[a][1][b]). Here, since Officer Cox acknowledged that the police vehicle was "blocking" the driveway while the Audi's engine was running and its lights were on, the Audi could not have pulled out of its position partially on the sidewalk. Thus, it was necessary for the Audi to remain stopped to avoid conflict with another vehicle, which did not constitute a violation of Vehicle & Traffic Law § 1202.
Further, to the extent Officer Cox testified that there was a violation of Vehicle & Traffic Law § 402(1) based upon the Audi having a tinted license plate cover, the People raise no contention on appeal regarding a violation of Vehicle & Traffic Law § 402. Therefore, there is no basis to consider whether Officer Cox's testimony was sufficient to establish a violation of that provision.
Our dissenting colleagues state that the issue of whether the police had a sufficient basis to block the Audi from leaving the driveway is not reviewable because that issue was not decided by the hearing court. We respectfully disagree. While CPL 470.15 bars this Court from deciding an appeal on a ground not ruled upon by the trial court (see People v LaFontaine, 92 NY2d 470, 474), "nothing in the language of CPL 470.15(1) . . . prohibits an appellate court from considering the record and the proffer colloquy with counsel to understand the context of the trial [*4]court's ultimate determination" (People v Nicholson, 26 NY3d 813, 825). Moreover, "where the trial court gives a reason [for its decision] and there is record support for inferences to be drawn from that reason, the Appellate Division does not act beyond the parameters legislatively set forth in CPL 470.15(1) when it considers those inferences" (id. at 826).
Here, the prosecutor argued before the Supreme Court that "[e]ven if the primary motivation was to conduct unrelated investigations," Officer Cox had a sufficient basis "to stop the vehicle" and "to stop the other occupants of the car when the officer saw that the car was blocking the sidewalk." In its written decision, the court recited the People's contention that "even assuming they failed to overcome the [defendants'] challenge to their reliance on the fellow officer rule, the facts in this case independently support Officer Cox's actions," including Officer Cox's observation of the Audi blocking the sidewalk. Thus, it is evident that the Supreme Court considered and rejected the People's contention that Officer Cox's actions, including stopping the vehicle, were justified based upon his observations of the Audi. Moreover, CPL 470.15(1) does not prohibit this Court from "considering the record and the proffer colloquy with counsel," during which the People argued that Officer Cox was justified in stopping the Audi, "to understand the context of the trial court's ultimate determination" (People v Nicholson, 26 NY3d at 825).
Since the sole basis for Officer Cox to stop the Audi was to arrest Stewart based on the information in the warrant, which was not shown to be reliable under the Aguilar-Spinelli test (see Spinelli v United States, 393 US 410; Aguilar v Texas, 378 US 108), we conclude that the physical evidence obtained from the ensuing search must be suppressed as fruit of the poisonous tree (see People v Dubuisson, 206 AD3d at 759; People v Brown, 205 AD2d at 792). Accordingly, the hearing court properly granted those branches of the defendants' separate omnibus motions which were to suppress the evidence obtained from the Audi.
WOOTEN, GENOVESI and WAN, JJ., concur.
DILLON, J.P., dissents, and votes to reverse the order, on the law, deny those branches of the defendants' separate omnibus motions which were to suppress physical evidence, and remit the matter to the Supreme Court, Queens County, for further proceedings on the indictment, with the following memorandum, in which MALTESE, J., concurs:
The suppression motions should have been denied. A police officer saw the defendant Kurt Stewart occupying an Audi that was parked blocking the sidewalk. The officer, intending to arrest Stewart, proceeded toward the Audi. Before having any interaction with the vehicle occupants, the officer smelled what he identified, with the aid of training and experience, as the odor of marijuana emanating from inside the vehicle. As the law then stood, the officer's detection of the odor of marijuana emanating from inside the vehicle justified the police search of the Audi. My learned colleagues in the majority, however, affirm the order granting the suppression motions. Therefore, I respectfully dissent.
"On a motion to suppress physical evidence, the People bear the burden of going forward to establish the legality of police conduct in the first instance" (People v Rhames, 196 AD3d 510, 511-512 [internal quotation marks omitted]). "Once the People have met their initial burden, the defendant bears the ultimate burden of proving the illegality of the search and seizure" (People v Brown, 198 AD3d 803, 805). "The credibility determinations of the hearing court are entitled to great deference on appeal and will not be disturbed unless clearly unsupported by the record" (People v Henderson, 197 AD3d 663, 664).
"Where police acting in their law enforcement capacity initiate an encounter with private citizens, the propriety of the encounter must be assessed under the four-tiered analytical framework articulated in People v De Bour (40 NY2d 210)" (People v Brown, 198 AD3d at 805; see People v McIntosh, 96 NY2d 521, 525). "[L]evel one permits a police officer to request information from an individual and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality; level two, the common-law right of inquiry, permits a somewhat greater intrusion and requires a founded suspicion that criminal activity is afoot; level three authorizes an officer to forcibly stop and detain an individual, and requires a reasonable suspicion that the particular individual was involved in a felony or misdemeanor; level four, arrest, requires probable cause to believe that the person to be arrested has committed a crime" (People v Moore, 6 NY3d 496, 498-499; see People v De Bour, 40 NY2d at 223).
In this case, the police conduct was justified. A police officer, whose testimony the hearing court found credible, testified that he was in the area looking to arrest Stewart on an extradition warrant. While traveling in a police vehicle, the officer saw a white Audi parked blocking the sidewalk, and on further observation identified Stewart as an occupant of the vehicle. On exiting the police vehicle and proceeding toward the Audi, the officer smelled what he identified, with the aid of training and experience, as the odor of marijuana emanating from inside the vehicle. This detection of marijuana justified the police search of the Audi (see People v Potter, 208 AD3d 802, 804; People v Vaughn, 203 AD3d 1729, 1730; People v Henderson, 197 AD3d at 664; People v Singletary, 156 AD3d 731; People v McLaren, 131 AD3d 548, 549).
The hearing court granted suppression based on its conclusion that the officer was present at the location in question, intending to arrest Stewart, in reliance on extradition warrant information that was not shown to be reliable pursuant to the Aguilar-Spinelli test (see Spinelli v United States, 393 US 410; Aguilar v Texas, 378 US 108; see also People v Mortel, 197 AD3d 196, 204). However, the officer's detection of the odor of marijuana as he proceeded toward the Audi justified the police conduct irrespective of the officer's subjective motivation (see People v Price, 186 AD3d 903, 904; see generally Whren v United States, 517 US 806; People v Robinson, 97 NY2d 341, 348-349).
My colleagues in the majority conclude that the police conducted a stop of the Audi, by blocking it from leaving a driveway, absent a showing of the requisite reasonable suspicion that Stewart or the other occupants of the Audi either were involved in criminal activity or posed some danger to the police. The majority's conclusion runs afoul of CPL 470.15(1). "It is . . . well established that CPL 470.15(1) 'precludes the Appellate Division from reviewing an issue that was either decided in an appellant's favor or was not decided by the trial court'" (People v Marcial, 211 AD3d 98, 102, quoting People v Ingram, 18 NY3d 948, 949; see CPL 470.15[1]; People v Concepcion, 17 NY3d 192, 195-196; People v LaFontaine, 92 NY2d 470, 473-474). In this case, the issue of whether the police stopped the Audi was not decided by the hearing court, and so it cannot be reviewed now by this Court on the People's appeal.
To the extent the majority concludes that the officer's detection of marijuana did not justify a police search of the vehicle independent of the warrant, I respectfully disagree. The odor of marijuana was detected while the officer was on foot and still approaching the vehicle. That "approach" in the dictionary sense of the word is distinguishable from a De Bour "approach" in the legal sense of the word. A De Bour approach contemplates some form of intrusion, encounter, or interaction with a defendant such as the display of a badge, a knock on a vehicle's window, or a request for information (see People v McIntosh, 96 NY2d at 527 [De Bour was triggered when an [*5]investigator asked bus passengers to produce documentation]), beyond an officer's mere pre-encounter advancement in the direction of a person or stationary vehicle. My conclusion would be different if the odor of marijuana were detected after the officer had already initiated an encounter with the defendants within the vehicle (see People v McIntosh, 96 NY2d at 527 [police encounter cannot be validated by after-acquired suspicion]; People v De Bour, 40 NY2d at 215-216; People v Vaughn, 203 AD3d at 1730).
Indeed, an extension of De Bour prior to any actual interaction between an officer and a defendant would potentially lead to absurd results where an officer who has an invalid warrant under Aguilar-Spinelli, and who happens to witness the commission of a crime before initiating any contact with the defendant whatsoever, would be precluded from making an arrest and seizing relevant evidence for the crime witnessed before his or her eyes.
The odor of marijuana emanating from the vehicle, upon being detected by the police officer trained in recognizing it, provided, under the circumstances of this case, independent probable cause to search the vehicle (see People v Henderson, 197 AD3d at 664; People v McLaren, 131 AD3d at 549).
Accordingly, I would reverse the order, deny those branches of the defendants' separate omnibus motions which were to suppress physical evidence, and remit the matter to the Supreme Court, Queens County, for further proceedings on the indictment.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court