People v Johnson (2025 NY Slip Op 06183)

People v Johnson

2025 NY Slip Op 06183

Decided on November 12, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 12, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

LARA J. GENOVESI, J.P.
WILLIAM G. FORD
LOURDES M. VENTURA
SUSAN QUIRK, JJ.

2023-02267 
2023-06457
 (Ind. No. 71331/22)

[*1]The People of the State of New York, appellant,
v
Jason Johnson, respondent.

Anne T. Donnelly, District Attorney, Mineola, NY (Daniel Bresnahan, Autumn S. Hughes, and Francine Michel of counsel), for appellant.

DECISION & ORDER
Appeals by the People from (1) an order of the County Court, Nassau County (Francis Ricigliano, J.), entered January 9, 2023, and (2) an order of the same court (Howard E. Sturim, J.) entered July 6, 2023. The order entered January 9, 2023, after a hearing pursuant to a stipulation in lieu of motions, granted suppression of physical evidence and the defendant's statements to law enforcement officials. The order entered July 6, 2023, insofar as appealed from, upon reargument, adhered to the original determination in the order entered January 9, 2023.
ORDERED that the appeal from the order entered January 9, 2023, is dismissed, as that order was superseded by the order entered July 6, 2023, made upon reargument; and it is further,
ORDERED that the order entered July 6, 2023, is affirmed insofar as appealed from.
The defendant was indicted on various charges, including criminal possession of a controlled substance.
At a suppression hearing, two police officers testified that, at approximately 8:00 p.m. on November 7, 2021, they were on routine patrol in Glen Cove when they observed the defendant's vehicle, which was stopped in a fire lane. The officers testified that they recognized the vehicle from a police bulletin, drove past the vehicle, and then met with another police vehicle some distance away. The two police vehicles then returned, and one vehicle stopped in front of the defendant's vehicle and one stopped behind it. The two officers in the lead vehicle then approached the driver and passenger sides of the defendant's vehicle. One of the officers testified that the defendant opened the vehicle door and made certain statements about smoking marijuana. That officer then asked the defendant to exit the vehicle, at which time the officer patted down the defendant. The officers escorted the defendant to the rear of his vehicle where a pill bottle containing what appeared to be cocaine fell from the defendant's person. The officers then placed the defendant in handcuffs, searched him, and found a pill bottle containing what appeared to be oxycodone on his person. The defendant was transported to the police station, at which time the officers searched the defendant and found a pill bottle containing what appeared to be heroin on his person. While the defendant was at the police station, he saw an officer weighing the cocaine on an evidence table, at which time the defendant stated, "[I]t's seven grams."
In an order entered January 9, 2023, the County Court granted suppression of physical evidence and the defendant's statements to law enforcement officials, finding that the police officers lacked reasonable suspicion to stop the defendant's vehicle. The People subsequently moved for leave to reargue. In an order entered July 6, 2023, the court granted leave to reargue and, upon reargument, adhered to its original determination. The People appeal.
"On a motion to suppress physical evidence, the People bear the burden of going forward to establish the legality of police conduct in the first instance" (People v Rhames, 196 AD3d 510, 511-512 [internal quotation marks omitted]; see People v Messano, 41 NY3d 228, 233; People v Walls, 37 NY3d 987, 988). "Once the People have met their initial burden, the defendant bears the ultimate burden of proving the illegality of the search and seizure" (People v Brown, 198 AD3d 803, 805).
"Where police acting in their law enforcement capacity initiate an encounter with private citizens, the propriety of the encounter must be assessed under the four-tiered analytical framework articulated in People v De Bour (40 NY2d 210)" (id.; see People v McIntosh, 96 NY2d 521, 525). "[L]evel one permits a police officer to request information from an individual and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality; level two, the common-law right of inquiry, permits a somewhat greater intrusion and requires a founded suspicion that criminal activity is afoot; level three authorizes an officer to forcibly stop and detain an individual, and requires a reasonable suspicion that the particular individual was involved in a felony or misdemeanor; level four, arrest, requires probable cause to believe that the person to be arrested has committed a crime" (People v Moore, 6 NY3d 496, 498-499; see People v De Bour, 40 NY2d at 223). "Reasonable suspicion has been defined as 'that quantum of knowledge sufficient to induce an ordinarily prudent and cautious person under the circumstances to believe criminal activity is at hand'" (People v Loper, 115 AD3d 875, 878, quoting People v Martinez, 80 NY2d 444, 448). "Whether a police intrusion has amounted to a forcible stop and detention turns on whether there has been 'a significant interruption with an individual's liberty of movement'" (id., quoting People v De Bour, 40 NY2d at 216).
Here, the People failed to establish the legality of the police conduct. Contrary to the People's contention, the police officers' conduct in stopping police vehicles both in front of and behind the defendant's vehicle blocked the defendant's vehicle and "'constituted a stop, which required reasonable suspicion that the defendant or other occupants of the vehicle were either involved in criminal activity or posed some danger to the police'" (People v Dubuisson, 206 AD3d 757, 759, quoting People v Lopez, 75 AD3d 610, 612; see People v Joyette, 219 AD3d 628, 631; People v Loper, 115 AD3d at 879).
While the defendant was stopped in a fire lane, the People failed to present any evidence showing that the police officers observed any criminal activity at the time the police blocked the defendant's vehicle (see People v Taylor, 238 AD3d 902, 904; People v Dubuisson, 206 AD3d at 757). Moreover, while the police officers testified that they relied upon the police bulletin stating that the defendant was driving without a license and was known to carry a firearm, the People failed to establish the reliability of the information in the bulletin, as the People did not present any evidence regarding the source of that information at the hearing (see People v Joyette, 219 AD3d at 631; People v Mortel, 197 AD3d 196, 205-206). Accordingly, the stop was illegal, and the physical evidence and the defendant's statements were properly suppressed as the fruits of that illegal action (see People v Joyette, 219 AD3d at 632-633).
GENOVESI, J.P., FORD, VENTURA and QUIRK, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court